MALCOLM v CITY OF EAST DETROIT

Docket No. 87603. Argued December 4, 1990 (Calendar No. 3). Decided April 15, 1991.

Cynthia Malcolm, for herself, and as next friend of William Malcolm, brought a personal injury action in the Wayne Circuit Court against the City of East Detroit and its fire department attendants, Arthur Klawender and Shelley Moen, and Joseph Croff, a certified emergency medical technician, alleging negligence, gross negligence, and wilful misconduct for severe brain damage suffered by William Malcolm as a result of prolonged oxygen deprivation during emergency treatment administered by the defendants after he had suffered a heart attack. The court, Marvin R. Stempien, J., granted summary disposition for the defendants regarding the negligence and gross negligence claims, and denied the defendants' motion for summary disposition based upon governmental immunity, deciding that the language of the emergency medical services act, MCL 333.20701 et seq.; MSA 14.15(20701) et seq., created an exception to the governmental tort liability act, MCL 691.1401 et seq.; MSA 3.996(101) et seq. The court additionally directed a verdict for Croff, and entered judgment following a verdict by the jury that the remaining individual defendants had not committed acts of wilful misconduct, but that the city had. The Court of Appeals, CYNAR, P.J., and BRENNAN and MARILYN J. KELLY, JJ., affirmed in an opinion per curiam, finding that the city could be liable under the EMSA since the act was intended to create a statutory exception to governmental immunity (Docket No. 107182). The decision is in conflict with Bokor v Detroit, 178 Mich App 268 (1989). Leave to appeal is limited to the question whether liability may be imposed upon a governmental agency pursuant to the provisions of the EMSA, despite the immunity granted in the GTLA.

In an opinion by Justice BRICKLEY, joined by Chief Justice CAVANAGH and Justices LEVIN, BOYLE, RILEY, and GRIFFIN, the Supreme Court held:

Section 20737 of the EMSA modified § 7 of the GTLA, at least with respect to the vicarious liability of the governmental unit for the acts or omissions of those persons listed in the first sentence of § 20737. The vicarious liability imposed upon a

governmental unit pursuant to § 20737 of the EMSA arose only when the acts or omissions of those persons listed constituted gross negligence or wilful misconduct. In this case, any direct liability against the City of East Detroit is foreclosed pursuant to the GTLA, and the city is not vicariously liable because attendants Klawender and Moen have not been found liable for acts or omissions constituting gross negligence or wilful misconduct.

1. The emergency medical services act clearly singles out certain governmental employees and their governmental employers for standards of immunity different from the more comprehensive governmental tort liability act. The EMSA provided specific circumstances in which immunity from tort liability was granted and limited with regard to governmental units, whereas § 7 of the GTLA provides a general grant of immunity to governmental units for unspecified circumstances involving tort liability. This suggests that § 20737 of the EMSA created an exception to § 7 of the GTLA. To the extent that it set different standards of immunity, it should be considered to have been an exception to or an amendment of the immunity granted in § 7 of the GTLA.

2. Governmental agencies are immune from tort liability for injuries arising out of the exercise or discharge of a nonproprietary, governmental function. Governmental employees, agents, and lower-level officers also are immune from tort liability when acting during the course and within the scope of their authority in good faith and performing discretionary-decisional rather than ministerial-operational tasks. Vicarious liability may be imposed on a governmental agency in those instances where governmental immunity does not apply and an employee, while acting during the course of and within the scope of authority, commits a tort.

3. Section 20737 of the EMSA provides that when performing services consistent with training, an ambulance attendant is not liable for acts or omissions in the treatment of a patient when the service is performed outside a hospital. Nor do acts or omissions of an attendant impose liability on the authoritative governmental unit, unless the acts or omissions were the result of gross negligence or wilful misconduct. Section 7 of the GTLA and § 20737 of the EMSA were in pari materia because they had the common purpose of granting immunity to governmental entities for tortious conduct and should be read as having constituted one law. Under the GTLA, a governmental agency is vicariously liable when its agent commits a tort within the scope of the agent's authority that is included within one of the

exceptions, and directly liable when the governmental unit commits a tort by its own actions or failure to act. The EMSA created a new standard for determining when liability was to be imposed upon certain enumerated individuals and the corresponding authoritative governmental unit in emergency medical service situations. The literal interpretation of the EMSA, which imposed only vicarious liability on the governmental unit, creates the most logical application of both acts.

4. In this case, vicarious liability would be imposed on the city if the acts or omissions of its attendants were found to constitute gross negligence or wilful misconduct. However, the jury in this case did not so find, and the finding was not contested by the plaintiff. The city is not vicariously liable because its attendants were not found liable for acts or omissions constituting gross negligence or wilful misconduct.

Reversed.

Justice MALLETT took no part in the decision of this case.

180 Mich App 633; 447 NW2d 860 (1989) reversed.

*Eric J. McCann, P.C.,* for the plaintiffs.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe* and *T. Joseph Seward*), for the defendants.

BRICKLEY, J. The emergency medical services act (EMSA), MCL 333.20701 *et seq.*; MSA 14.15(20701) *et seq.,* imposed liability on certain enumerated "persons" for acts or omissions constituting gross negligence or wilful misconduct.[1] The governmental tort liability act (GTLA), MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.,* provides immunity to governmental agencies from tort liability. The ques-

---

[1] When performing services consistent with the individual's training, acts or omissions of an ambulance attendant . . . do not impose liability on those individuals in the treatment of a patient when the service is performed outside a hospital. Such acts or omissions also do not impose liability on . . . the authoritative governmental unit or units. All persons named in this section . . . are protected from liability unless the act or omission was the result of gross negligence or wilful misconduct. [MCL 333.20737; MSA 14.15(20737).]

tion presented is whether liability may be imposed upon a governmental agency pursuant to the provisions in the EMSA, despite the immunity granted in the GTLA.

I

Plaintiff, William Malcolm, suffered a heart attack on May 12, 1984. Cynthia Malcolm, his wife, summoned assistance from the Fire Department of the City of East Detroit. The city dispatched attendants Arthur Klawender and Shelley Moen to the Malcolm residence.[2] Neither attendant was certified as an emergency medical technician.

The attendants arrived approximately two minutes after Cynthia Malcolm had telephoned for assistance. The defendants observed plaintiff vomiting and to be apparently unresponsive. After it was determined that plaintiff was not breathing and did not have a pulse, cardiopulmonary resuscitation (CPR) was immediately administered by attendant Klawender. At this time, attendant Moen contacted Joseph Croff, who is certified as an emergency medical technician, for additional assistance. Attendant Moen returned to assist in the application of CPR.

Attendant Moen administered chest compressions upon plaintiff while attendant Klawender pumped air into plaintiff's lung with an ambu-bag.[3] Plaintiff's son informed attendant Klawender that plaintiff had vomited into the ambu-bag and that it should be cleared to prevent vomit from being forced back into the victim's throat and

[2] Attendants Klawender and Moen were assigned as ambulance attendants on the day of the incident and were dispatched from the fire station.

[3] An ambu-bag is a clear plastic mask-like device which is placed over the mouth of the victim and pumps oxygen or room air into the victim's mouth.

causing blockage of the air passages. Attendant Klawender allegedly told plaintiff's son it was necessary to keep pumping air into the lungs of the plaintiff.[4] Plaintiff's son testified that his father began to turn blue after continued use of the uncleared ambu-bag.

Joseph Croff arrived approximately four minutes after the attendants had first arrived at the Malcolm residence. Discovering that plaintiff had no pulse, Croff determined that plaintiff should be transferred to the hospital. Plaintiff arrived at the hospital approximately eleven minutes after the first request for assistance was made by Cynthia Malcolm. It was necessary for the hospital to perform defibrillation seven times in order to restore his natural heartbeat.[5] Plaintiff survived the heart attack; however, he suffers severe brain damage from prolonged lack of oxygen.

Suit was brought on behalf of William Malcolm and individually by Cynthia Malcolm against several defendants. The hospital and hospital staff that treated plaintiff were dismissed pursuant to stipulation. The trial court granted summary disposition for the remaining defendants regarding the claims of negligence and gross negligence. However, the trial court permitted the claim of wilful misconduct to remain, since it found that plaintiff had alleged sufficient facts to support this claim. The trial court denied defendants' motion for summary disposition based upon governmental immunity, deciding that the language of the EMSA

---

[4] Defendant disputes that the ambu-bag forced vomit back into the mouth of plaintiff causing blockage of air passages. Defendant does admit that foreign matter was found in the mouth and lungs of the plaintiff, however, asserting it constituted a minor occlusion or blockage of the air passage.

[5] Defibrillation is the application of electrical shock to the heart of a person to restore its natural beating which then permits oxygen to reach the brain.

created an exception to governmental immunity. After plaintiff's case in chief was presented, the court granted defendant Joseph Croff a directed verdict, stating that plaintiff had not presented sufficient evidence to establish that Croff had committed wilful misconduct.

The jury found that the remaining individual defendants had not committed acts of wilful misconduct, but that the City of East Detroit had, and awarded $500,000 in damages.[6]

The Court of Appeals affirmed, 180 Mich App 633; 447 NW2d 806 (1989), finding that the city could be liable under the EMSA since it was the intention of that act to create a statutory exception to governmental immunity under certain instances. The Court of Appeals also found that the term "persons" as it is used in § 20737 of the EMSA includes governmental units. In so ruling, the Court of Appeals differed with a prior decision of a different panel of the Court of Appeals which had opined that the EMSA was not an exception to the governmental immunity spelled out in the GTLA. See *Bokor v Detroit,* 178 Mich App 268; 443 NW2d 399 (1989). The panel in this case determined that the *Bokor* view was unpersuasive dicta. This Court granted leave to appeal to the City of East Detroit on July 10, 1990. 435 Mich 862 (1990).

II

We agree with the Court of Appeals panel that the word "person" as used in § 20737 of the EMSA

---

[6] The jury initially found that the wilful misconduct of the City of East Detroit was not the proximate cause of the injuries suffered by the plaintiff; however, the trial court found the jury verdict inconsistent and reinstructed the jury regarding the definition of proximate cause. After reinstruction, the jury found that the wilful misconduct of the City of East Detroit was a proximate cause of plaintiff's injuries.

included governmental units and that the EMSA did modify the GTLA, but disagree with the Court of Appeals result because of its failure to distinguish between direct and vicarious liability as it is affected by the EMSA.

A

The definition of "person" in the EMSA explicitly stated that the term included governmental entities other than an agency of the United States. MCL 333.20706(2); MSA 14.15(20706)(2). Additionally, a differentiation between governmental entities and human persons was made by use of the term "individuals" in § 20737 where such a differentiation was desired. Therefore, the City of East Detroit is a "person" as that term was used in § 20737 of the EMSA.

B

The defendant city points to the following language of the GTLA in support of its contention that liability is limited to the exceptions to governmental immunity as provided in that act.

> *Except as in this act otherwise provided,* all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. [1970 PA 155, MCL 691.1407; MSA 3.996(107). Emphasis added.]

As will be developed in our analysis of the two acts, the Legislature, in adopting the EMSA, clearly meant to single out certain governmental employees and their governmental employers for standards of immunity different from those extant in the more comprehensive GTLA. Section 20737 of

the EMSA provided specific circumstances in which immunity from tort liability was granted and limited with regard to governmental units, whereas § 7 of the GTLA provides a general grant of immunity to governmental units for unspecified circumstances involving tort liability.

We must, of course, follow the well-tested principle of construction that the Legislature is held to be aware of the existence of the law in effect at the time of its enactments and that it would not engage in a wasteful effort of only repeating the work of a prior Legislature. This suggests that § 20737 of the EMSA created an exception to § 7 of the GTLA. This is fortified by another well-noted principle of construction that a subsequently enacted specific statute is regarded as an exception to a prior general one, especially if they are in pari materia. See *Imlay Twp Primary School Dist No 5 v State Bd of Ed,* 359 Mich 478; 102 NW2d 720 (1960); *Corrigan v Insilco Corp,* 176 Mich App 262; 439 NW2d 350 (1989); *Hisaw v Hayes,* 133 Mich App 639; 350 NW2d 302 (1984); *First Bank of Cadillac v Miller,* 131 Mich App 764; 347 NW2d 715 (1984). Furthermore, since one Legislature cannot bind the power of its successor, *Harsha v Detroit,* 261 Mich 586; 246 NW 849 (1933), the language "[e]xcept as in this act otherwise provided" cannot be a bar to further exceptions set forth in subsequently enacted statutes.

Therefore, § 20737 of the EMSA, to the extent it, in fact, set different standards of immunity, should be considered to have been an exception to or an amendment of the immunity granted in § 7 of the GTLA.

C

In determining to what extent the EMSA created

a statutory exception to governmental immunity for tort liability, we look first to our analysis of governmental immunity as set forth in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984).

We held there that governmental agencies are "immune from tort liability for injuries arising out of the exercise or discharge of a nonproprietary, governmental function."[7] *Id.* at 591. This Court also opined that governmental employees, agents, and lower-level officers are immune from tort liability when acting during the course and within the scope of their authority in good faith and performing discretionary-decisional rather than ministerial-operational tasks. *Id.* at 592.[8] Vicarious liability may be imposed on a governmental agency in those instances when governmental immunity does not apply and an employee, while acting during the course of and within the scope of authority, commits a tort. *Id.* at 591-592.

The EMSA replaced the Advanced Emergency Medical Technician Practices Act, 1974 PA 275, by the time of the injury in this case. The provision of

[7] This Court adopted a new definition of governmental function in *Ross*, i.e., any activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law.

[8] In 1986, the GTLA was amended to include officers, employees and volunteers of governmental agencies within its provisions, MCL 691.1407(2); MSA 3.996(107)(2), replacing the common-law coverage adopted in *Ross*. Pursuant to the amended statute, a governmental official is immune from liability when: (a) the official acts or reasonably believes to act within the scope of authority; (b) the governmental agency is engaged in the exercise or discharge of a governmental function; and (c) the employee's conduct did not amount to gross negligence that proximately caused the injury or damage. The Legislature also adopted this Court's definition of governmental function in the 1986 amendment. MCL 691.1401(f); MSA 3.996(101)(f). However, the 1986 amendment does not affect the decision in the instant case since it was not in effect at the time the case was filed. See 1986 PA 175.

the EMSA crucial to determination of this case is former MCL 333.20737; MSA 14.15(20737):[9]

> When performing services consistent with the individual's training, *acts or omissions of an ambulance attendant* . . . do not impose liability on those individuals in the treatment of a patient when the service is performed outside a hospital. *Such acts or omissions*[10] also do not impose liability on . . . the authoritative governmental unit or units. All persons named in this section . . . are protected from liability unless *the act or omission* was the result of gross negligence or wilful misconduct.[11] [Emphasis added.]

Plaintiff maintains that § 20737 of the EMSA created an exception to the GTLA when the government agency is found to have engaged in gross negligence or wilful misconduct. Plaintiff asserts that the city engaged in wilful misconduct when it sent untrained personnel to treat plaintiff, when it assigned unqualified personnel to be first responders for emergency medical services, and for fail-

[9] In 1990 PA 179 the Legislature, apparently in response to the Court of Appeals opinion in this case, added subsection (2) to § 20737 (which was also changed to MCL 333.20965; MSA 14.15[20965]) which provides:

> (2) Subsection (1) does not limit immunity from liability otherwise provided by law for any of the persons listed in subsection (1).

There was no indication that the amendment was to be given retroactive application; therefore, we do not express a view regarding any effect this amendment may have upon the analysis of this case.

[10] In 1981 PA 79, the Legislature added the phrase "Such acts or omissions"; however, the meaning of the provision remained consistent with the previous language found in 1974 PA 275. See former MCL 338.1906; MSA 14.528(86).

[11] There have been several amendments of the emergency medical services act since it was initially created. See 1976 PA 290, 1981 PA 79, 1986 PA 239, and 1990 PA 179. However, the provisions we find relevant to the decision of this case have not been materially altered. See ns 9 and 10.

ure to have a licensed EMT in the ambulance when it arrived at plaintiff's residence in violation of MCL 333.20733(1); MSA 14.15(20733)(1).[12] Plaintiff therefore claims the city should be held directly liable for its failure to act in accordance with the statutory requirements of the EMSA and that such failure amounted to wilful misconduct, constituting an exception to governmental tort immunity. The city contends that it is entitled to judgment as a matter of law, since any finding of liability under the EMSA can only be vicarious in nature, and that because the individual defendants were found not to have engaged in wilful misconduct, no vicarious liability could be imposed upon it.

In enacting the EMSA, it seems that the Legislature desired uniform regulation of emergency medical services and that it also intended to limit the liability exposure which may be created by providing such emergency medical services to the general public.[13] The preamble of the EMSA, as enacted in 1981, stated:

> An act to protect and promote the public health; to codify, revise, consolidate, classify, and add to the laws relating to public health; . . . to regulate occupations, facilities, and agencies affecting the public health; . . . *to provide certain immunity from liability* . . . . [1981 PA 79.[14] Emphasis added.]

[12] The city contends that plaintiff did not raise these claims of wilful misconduct in the complaint or present them during plaintiff's case in chief, and thus that they should not be considered by this Court. Our decision does not require us to consider the validity of these allegations.

[13] See House Legislative Analysis, HB 5732, September 30, 1974.

[14] The previous preambles of the emergency medical services act did not use the particular phrase "to provide certain immunity from liability"; they had stated: (1) "to limit liability of certain medical personnel under certain conditions," 1976 PA 290, (2) "to limit liability," 1974 PA 275. However, the meaning of each change has remained constant throughout these amendments.

Although a preamble is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope. 2A Sands, Sutherland Statutory Construction (4th ed), § 47.04, pp 126-128. It would seem, at first blush, that the Legislature intended to provide governmental immunity beyond that already in existence in the GTLA. In fact, however, the Legislature shifted the focus of the inquiry for determining when immunity was to be granted pursuant to the EMSA by using a gross negligence or wilful misconduct standard for the imposition of liability upon the enumerated "persons," rather than a ministerial-discretionary distinction for government employees or a governmental function/nonproprietary activity analysis for governmental units. The standard adopted by the Legislature in § 20737 of the EMSA for imposing liability upon authoritative governmental units differs from the standard employed in § 7 of the GTLA as it has been interpreted by *Ross* and subsequently embraced by the Legislature.[15]

The only reference in the EMSA to "authoritative governmental units" is in connection with vicarious liability. The first sentence of § 20737 granted immunity to the ambulance attendants ("individuals") for the acts or omissions committed by them while performing services consistent with their

[15] The Legislature did not have the advantage of our analysis of governmental immunity in our 1984 *Ross* decision when it enacted the EMSA in 1974 PA 275. Thus, the liability exposure which an authoritative governmental unit would face while rendering emergency medical services was not readily ascertainable from the case law in existence at the time 1974 PA 275 was enacted. There were decisions by this Court before *Ross* which created many different standards and definitions for determining the extent of immunity to be enjoyed by governmental units and employees. See *Ross* at 610-621. Therefore, the Legislature most likely drafted the language of 1974 PA 275 in order to create a clear standard for determining the extent of immunity to be granted in situations involving emergency medical services.

training, and made no reference to "persons." It also did not make a distinction between ministerial and discretionary activities as does the traditional governmental immunity analysis. The second sentence[16] stated, "Such acts or omissions also do not impose liability on . . . the authoritative governmental unit . . . ." Clearly the acts or omissions referenced in this second sentence are the ones designated in the *prior* sentence of the provision which is limited to the acts or omissions of the specified "individuals." The authoritative governmental unit was then granted immunity for the acts or omissions of the ambulance attendants for ordinary negligence—an immunity already enjoyed by governmental units under the GTLA.

The last sentence of § 20737 of the EMSA stated, "All persons named in this section . . . are protected from liability unless *the* act or omission was the result of gross negligence or wilful misconduct." (Emphasis added.) The three sentences of § 20737 of the EMSA all refer to certain "acts or omissions" by the "individuals" listed in the first sentence. Therefore, the only "acts or omissions" relevant for application of § 20737 are those of the "individuals" listed within the first sentence of that provision.[17]

---

[16] This second sentence was created by 1981 PA 79, § 20737. See n 10.

[17] This interpretation is consistent with the legislative analysis of § 20737. The legislative analysis stated:

> An *act or omission of an attendant,* emergency medical technician, or advanced emergency medical technician while rendering emergency care which is:
>
> a) performed or omitted in good faith,
> b) consistent with their training,
> c) performed or omitted when the life of the patient is in immediate danger,
> d) performed or omitted in the course of rendering services outside a hospital, and

In essence, the third sentence in § 20737 stated that any person named in the section was granted immunity unless the act or omission of the "individuals" enumerated in the first sentence constituted gross negligence or wilful misconduct. The gross negligence and wilful misconduct standard set forth in the third sentence would indicate that the "individuals" listed in the first sentence were directly liable for gross negligence and wilful misconduct and that the authoritative governmental units listed in the second sentence were vicariously liable for those same acts or omissions that constituted gross negligence or wilful misconduct by such "individuals."

Section 7 of the GTLA and § 20737 of the EMSA are in pari materia because they have the common purpose of granting immunity to governmental entities for tortious conduct unless an exception is otherwise applicable. Therefore, these two acts should be read as constituting one law, despite having been enacted at different times and without reference to one another. We must construe these two separate provisions in order to preserve the intent of each and, if possible, in such a way that the effectiveness of each is maintained. See *Gooden v Transamerica Ins Corp of America,* 166 Mich App 793; 420 NW2d 877 (1988). We best preserve the purpose and intent of each provision by distinguishing between direct and vicarious liability in the EMSA.

Whether liability is vicarious or direct depends upon whether the focus is upon the entity or the

e) *not the result of gross negligence or willful misconduct,*

*would not impose liability upon* the attendant . . . or authoritative governmental unit. [Senate Legislative Analysis, SB 986, October 18, 1976. Emphasis added.]

See also Senate Legislative Analysis, SB 159, April 14, 1981.

individual employee committing the tort. As previously stated, under the GTLA, vicarious liability may be imposed upon a governmental agency when an agent of the government commits a tort within the scope of the agent's authority that is included within one of the exceptions. *Ross, supra.* Direct liability is imposed when the governmental unit commits a tort by way of its own actions or failure to act. *Id.* The EMSA created a new standard for determining when liability was to be imposed upon certain enumerated individuals and the corresponding authoritative governmental unit in emergency medical service situations. We find that the literal interpretation of the EMSA, which imposed only vicarious liability on the governmental unit, creates the most logical application of both acts.

III

On the basis of the above analysis, vicarious liability would be imposed upon the City of East Detroit if the acts or omissions of attendants Klawender and Moen were found to constitute gross negligence or wilful misconduct.[18]

The jury found that attendants Klawender and Moen had not committed acts or omissions which constituted wilful misconduct. This is a finding of fact which has not been contested by the plaintiff.[19] Therefore, the city cannot be held vicariously liable for wilful misconduct by the attendants.

With respect to the gross negligence claim against the defendants, the trial court granted summary disposition on the basis of a definition of gross negligence derived from case law.

[18] A directed verdict was granted for Croff regarding the claim of wilful misconduct. Plaintiff did not appeal that decision.

[19] Plaintiff stated at oral argument that the acts of the attendants did not constitute wilful misconduct.

In a case where the defendant, who knows, or ought, by the exercise of ordinary care, to know, of the *precedent negligence* of the plaintiff, by his *subsequent negligence* does plaintiff an injury. Strictly, this is the basis of recovery in all cases of gross negligence. [*Gibbard v Cursan*, 225 Mich 311, 319; 196 NW 398 (1923). Emphasis in original.]

The continued validity of this definition was recently questioned by this Court because of the abolition of contributory negligence as an affirmative defense in this state. See *Burnett v City of Adrian*, 414 Mich 448; 326 NW2d 810 (1982). When the definition of gross negligence was created in *Gibbard,* the focus of a gross negligence claim was avoidance of the affirmative defense of contributory negligence; this concept has now evolved into the last clear chance doctrine.

This Court decided not to alter the definition of gross negligence in *Burnett* because there was an incomplete record before it on which to make the determination.

> The more appropriate occasion for that effort will be the time when a case is before us upon a factual record adequate to enable those who will read our pronouncement to better understand it because of the illuminating reflection of the factual and legal context in which it is said. That cannot and ought not to be done on an appeal from the grant of a motion for summary judgment for failure to plead an actionable claim under GCR 1963, 117.2(1) [now MCR 2.116(C)(8)]. [*Id.* at 454-455.]

The Court went on to state that the decision in *Gibbard* was to be followed until a future case required revisiting the opinion.

We are not persuaded that this case requires us to revisit *Gibbard.* Plaintiff raised the issue in a

cross appeal in the Court of Appeals. The Court of Appeals affirmed the trial court's grant of summary disposition, relying upon this Court's decisions in *Gibbard* and *Burnett.* Plaintiff, however, failed to raise the issue before this Court on cross appeal; thus, the matter has not been preserved for review. See MCR 7.302(F)(4).

IV

The decision we reach today is that § 20737 of the emergency medical services act modified § 7 of the governmental tort liability act, at least with respect to the vicarious liability of the governmental unit for the acts or omissions of those persons listed in the first sentence of § 20737 of the EMSA.[20] The vicarious liability imposed upon a governmental unit pursuant to § 20737 of the EMSA arose only when the acts or omissions of those persons listed in the first sentence of § 20737 constituted gross negligence or wilful misconduct. Any direct liability against the city is foreclosed pursuant to the GTLA.

Therefore, we reverse the decision of the Court of Appeals and find defendant City of East Detroit not to be vicariously liable because attendants Klawender and Moen have not been found liable for acts or omissions constituting gross negligence or wilful misconduct.

CAVANAGH, C.J., and LEVIN, BOYLE, RILEY, and GRIFFIN, JJ., concurred with BRICKLEY, J.

MALLETT, J., took no part in the decision of this case.

---

[20] We do not decide whether § 20737 of the EMSA affects the application of any other provision contained within the GTLA. Our decision today is limited to a finding that § 20737 of the EMSA created a statutory exception to § 7 of the GTLA in the limited situation described.