YOUNG, C.J.
(dissenting). I respectfully, but vigorously, dissent. The majority opinion has done a remarkable thing. It has, through creative statutory interpretation, transformed an act that it acknowledges is solely designed to compensate workers and contractors who prevail on their construction liens into a vehicle for recovery of attorney fees for parties who have not prevailed—and cannot now prevail—on their construction liens. Inasmuch as I believe that the Legislature has, by every means at its disposal, textually communicated that recovery of attorney fees under the Construction Lien Act (CLA)[1] is permitted only to those parties who prevail on a construction lien, I cannot join the majority opinion.
I. FACTS AND PROCEDURAL HISTORY
While I agree with the majority opinion’s statement of the facts, I provide here certain additional facts that I think are important to the proper outcome in this case. At the conclusion of arbitration, the arbitrator rendered a net award of $450,820.36 to Ronnisch Construction Group (RCG). The arbitration award expressly stated that RCG’s award was based on *569 “[djirect damages for work performed under the Construction Contract.” Additionally, at three separate places within the award, the arbitrator noted that he was reserving the issue of RCG’s attorney fees under the CLA. The arbitrator expressly stated:
The Arbitrator makes no award as to RCG’s claim for attorney fees and costs under [MCL 570.1118(2)], and the issue of such attorney fees and costs under the Construction Lien Act is reserved for the Circuit Court in the underlying lawsuit....
Lofts on the Nine (LOTN) paid the arbitration award in full by wiring $484,319.76[2] to the client trust account of RCG’s counsel. RCG never returned or otherwise rejected the wire transfer payment. And RCG seemed to realize that acceptance of full payment jeopardized its attorney fees claim because it attempted to condition its acceptance of the payment on being able to seek attorney fees in the trial court. This offer of conditional acceptance was declined by LOTN.[3] RCG then moved in the trial court to lift the stay of proceedings, affirm the arbitration award, and award attorney fees under the CLA, claiming that it was a prevailing-party lien claimant under MCL 570.1118(2). The trial court denied RCG’s motion for attorney fees, determining that at no *570 point in the proceedings had RCG’s CLA claim ever been adjudicated—either by the arbitrator or the trial court. Most important for this case, the trial court also held that RCG’s lien claim was extinguished when RCG voluntarily accepted LOTN’s tender of payment before equitable proceedings on the lien claim.
The Court of Appeals vacated the portion of the trial court’s order pertaining to RCG’s attorney fees and remanded the case to the trial court for further proceedings, holding that the trial court erred by holding that it could not award RCG attorney fees and costs under the CLA because RCG “did not solely seek recovery on a breach of contract claim: plaintiffs complaint listed both a contract claim and a foreclosure-of-lien claim.”[4] On this basis, the Court of Appeals panel concluded that RCG was a prevailing lien claimant under MCL 570.1118(2).[5] LOTN applied for leave to appeal, which this Court granted.[6]
II. STANDARD OF REVIEW
This Court reviews a trial court’s decision whether to award attorney fees for an abuse of discretion.[7] An abuse of discretion occurs when the trial court’s decision is outside the range of reasonable and principled outcomes.[8] Issues of statutory construction are reviewed de novo.[9]
*571 III. ANALYSIS
Surprisingly, the CLA is about construction liens. The title of the CLA explicitly states that its purpose is
to establish, protect, and enforce by lien the rights of persons performing labor or providing material or equipment for the improvement of real property; to provide for defenses to construction liens; to provide remedies and prescribe penalties; and to repeal acts and parts of acts.[10]
The majority begins, as it must, by recognizing the purpose of the act. The majority does not have to speculate on this point because the Legislature has been kind enough to spell out the purpose of the CLA—both in the title and the text of the statute. As the majority opinion observes:
The CLA is “intended to protect the interests of contractors, workers, and suppliers through construction hens, while protecting owners from excessive costs.” The fundamental purpose of the CLA with respect to contractors, workers, and suppliers is to provide a method to secure payment for their labor and materials. The Legislature has declared that the CLA is “a remedial statute . .. [that] shall be liberally construed to secure the beneficial results, intents, and purposes of th[e] act.” Accordingly, when interpreting the CLA, we should always be mindful of the CLA’s intended purpose.[11]
And that is the last time the majority opinion pays attention to the purpose and text of the CLA.[12]
*572 The CLA actually defines who can recover attorney fees and requires that there be a present “right” to a lien. As I stated at the outset, the Legislature has textually communicated that this act concerns one thing: how construction lien disputes should be resolved. Not surprisingly, the Legislature begins by calling the statute the “construction lien act”[13] and then prescribes a procedure by which claims associated with construction lien disputes shall be resolved.[14] The Legislature was also very specific regarding who can recover attorney fees in these cases:
In an action to enforce a construction lien through foreclosure, the court shall examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities. The court may allow reasonable attorneys’ fees to a lien claimant who is the prevailing party .[15]
*573 Again, the Legislature has been careful to inform us who is entitled to recover attorney fees under the CLA because it has also defined a critical term in the quoted provision—who is a “lien claimant.” The term “lien claimant” is statutorily defined as “a person having a right to a construction lien under this act.”[16] Grammatically, this requires that the claimant have a present, not a previous or theoretical, right to a lien at the time the claimant is “the prevailing party.” Therefore, under a plain reading of the statute, a trial court may only award attorney fees to a person who “ha[s] a right to a construction lien under [the CLA]”[17] when that person “is the prevailing party” “[i]n an action to enforce a construction lien through foreclosure . . . .”[18]
While there are many additional textual indications that the Legislature intended to make attorney fees available only to those who prevailed on their lien claims (some of which I shall shortly address), the fatal flaw of the majority opinion is that it gives no meaning to this definition when it provides attorney fees to RCG, which, not having been adjudicated the prevailing party on the construction lien claim before accepting full payment, plainly was no longer a lien claimant, much less a prevailing one.
In this case, as it was permitted to do under the statute, RCG asserted claims under both the CLA and standard contract law.[19] Importantly, the trial court determined that RCG had prevailed only on its con *574 tract claim, for which attorney fees are not generally available.[20] RCG’s contract claim and lien claim were for identical amounts—a common occurrence, as the CLA expressly requires that a lien under the act “shall not exceed the amount of the lien claimant’s contract less payments made on the contract.”[21] While RCG prevailed at arbitration, it did so only on its contract claim, not the lien claim. Most legally significant, it received and accepted payment in full for all its damages incurred under the contract. As the trial court held at the time RCG moved for attorney fees, RCG had extinguished any claimed lien by accepting full payment. Neither the Court of Appeals nor the majority opinion explains why the trial court’s holding is erroneous. There is a reason: the trial court’s holding is legally correct.
The majority opinion simply fails to acknowledge that RCG was never more than a presumptive lien claimant that extinguished its lien before the validity of its lien claim was ever determined. No one has disputed that acceptance of the full amount of the arbitration award on the contract actually extinguished RCG’s lien. The CLA provides that a lien cannot “exceed the amount of the lien claimant’s contract less payments made on the contract.”[22] Accordingly, when RCG moved *575 in the trial court for an award of attorney fees, it was no longer a “person having a right to a construction lien under this act.”[23] Even though RCG could no longer legally satisfy the statutory definition of a “lien claimant who is the prevailing party,”[24] the majority opinion has ignored this as an inconvenient fact en route to permitting RCG’s recovery of attorney fees for prevailing on a contract claim.
In sum, there are two separate periods at issue in this case: (1) before RCG accepted LOTN’s offer of full payment on the arbitration award, and (2) after it accepted full payment. Before the acceptance of the payment, there had never been any determination that RCG was a valid “lien claimant”—that is, whether RCG was “a person having a right to a construction lien under this act.”[25] And after RCG accepted the payment, there was no more debt on which any lien could be based.[26]
The majority opinion ignores the grammatical tense of the critical provisions—that attorney fees are only available to “a lien claimant who is the prevailing party”[27] and that a lien claimant is someone “having a *576 right to a construction lien . . . .”[28] This is the Achilles’ heel of the majority opinion, one it attempts to conceal by holding that a trial court can order a hearing after a purported lien claimant files a motion for attorney fees and make factual findings on all elements of the party’s lien claim at that later time.[29] The majority opinion transforms the statutory requirement for the adjudication of a present right to a lien to a mere theoretical right. Even if a trial court could resolve whether the lien claim was valid in some cases in which the lien claimant has not extinguished its lien claim, the majority’s proposal cannot apply in this case. As noted, RCG had already accepted full payment from LOTN before it moved for attorney fees or confirmation of the arbitration award. Thus, as the trial court properly held, by the time the motion was filed, RCG had extinguished any right it had to a lien and could not honestly contend that it was then a lien claimant.[30] By that time, RCG simply could not validly *577 contend that it “ha[d] a right to a construction lien under”[31] the CLA. For the majority, this is a matter of indifference.
The majority opinion could have stopped as soon as it recognized that this plaintiff had no legal basis for asserting a valid right to a lien by the time RCG actually moved to confirm the arbitration award, much less when it moved to recover attorney fees. Nonetheless, the majority opinion goes even further, creating a remedy that the plain language of the CLA precludes and that cannot apply to RCG on the facts of this case.
At no point does the majority opinion contradict the proposition that, under the CLA and our caselaw, acceptance of full payment extinguishes a lien. Because it does not address this fundamental principle concerning liens and ignores that the CLA dictates that one cannot have a lien for more than is owed,[32] the majority is obligated to deflect the reader’s attention to other matters. The majority expends a lot of effort to avoid recognizing that RCG never had—and could not have—a valid lien after it accepted full payment of the arbitration award and without a prior adjudication of its right to a lien:
Further, that the trial court never entered a judgment confirming the arbitration award does not preclude us from determining that RCG was the prevailing party. The lack of judicial imprimatur in RCG’s favor is a direct result of the trial court’s failure to confirm RCG’s arbitration award upon its motion. Contrary to the trial court’s conclusion, LOTN’s payment of the arbitration award did *578 not obviate the need to confirm the award. In certain circumstances, confirmation may be necessary, even if the award has been satisfied. For instance, the winning party at arbitration may desire to seek costs. Or, as in the instant case, a party may wish to seek attorney fees. Although Michigan courts have not spoken on the issue, we agree with a number of other courts that a party cannot avoid confirmation by paying an arbitration award before the confirmation proceeding. Therefore, LOTN’s payment of the arbitration award should not have precluded the trial court from providing the necessary judicial imprimatur in this case by confirming the award.[33]
None of the foregoing statements about the necessity of confirmation of an arbitration award addresses why a party that has extinguished its lien by accepting full payment is nevertheless a party that has a present right to a lien. Instead, the majority opinion shifts to talk about the validity of the confirmation of the arbitration award, rather than the validity of the underlying lien.
The majority suggests that only its interpretive gobbledygook can prevent what it considers the gamesmanship of a party’s acceptance or rejection of payment:
Finally, we disagree with the dissent’s interpretation of the statute, which would require RCG to refuse the proffered payment and continue to litigate its foreclosure claim to remain eligible to seek attorney fees under [MCL 570.1118(2)]. Such a conclusion would encourage gamesmanship by defendants, allowing them to prolong litigation and delay payment on the contract claim in an attempt to drain the lien claimant’s resources before it can obtain a judgment on its lien claim and seek attorney fees. It also directly contravenes this Court’s policy of encouraging settlements and discouraging litigation. Therefore, *579 we instead conclude that RCG’s acceptance of payment did not preclude it from seeking attorney fees.[34]
The majority opinion’s purpose-driven, not textual, argument ignores the underlying problem with its remedy in this case and shifts the discussion to what it sees as the opportunity for “gamesmanship” available to defendants under my construction of the CLA.[35] Whether the legal consequences of having to choose to accept full payment or seek a judicial determination regarding the validity of RCG’s lien imposes a cost can be characterized as promoting gamesmanship, the majority opinion has wholly ignored one requirement of a lien claim on which CLA attorney fees necessarily must be predicated—that there is some construction contract payment owed to the lien claimant.[36] Settlements do sometimes require parties to choose among options, and sometimes selecting one may preclude complete optimization of the party’s preferred outcome. If none of the options is sufficiently acceptable, a party may opt to have someone adjudicate the dispute. RCG chose to accept full payment with full awareness that doing so might jeopardize its claim for CLA attorney fees.[37]
Apart from the fact that the majority opinion creates a remedy that RCG cannot legally receive, arguably the most startling thing about the majority opinion is that it takes a statutory framework called the “construction lien act”[38] and turns it into a vehicle for *580 attorney fees wholly divorced from success on the specific lien foreclosure action that this statutory scheme creates and defines. It is by delinking the entitlement to CLA attorney fees from success on the lien foreclosure action that the majority opinion creates a second problem: How does one draw the line on which ancillary claims create an entitlement to attorney fees and which do not? This is an exquisitely difficult question for the majority to answer because both the CLA and our court rules provide permission to join ancillary claims to the lien foreclosure claims.[39] Once success on the lien claim is no longer the necessary precondition to an attorney fees award under the CLA, unless success on most ancillary claims can be eliminated as a trigger for attorney fees, the majority allows a very expansive holding in favor of a general right to attorney fees on any claim brought with a construction lien foreclosure claim.
To avoid triggering attorney fees through success on any and all ancillary claims, the majority devises a new rule: success on contract claims alone is a trigger for the recovery of attorney fees under the CLA. The majority adopts this rule because it believes that the only thing the CLA requires as a precondition to an award of attorney fees is recovery on a claim “integrally related” to the CLA claim.[40]
Presumably, had the Legislature been content with the majority’s broader approach to a contract-based recovery of attorney fees for claims of unpaid construction debts, it would not have bothered with enacting *581 the CLA’s exacting lien foreclosure process, which requires recording a lien within a prescribed time frame, among other obligations. Indeed, at common law, a contractor always had a contract claim for any unpaid bills but no entitlement to attorney fees. So, the effect of the majority’s construction of the CLA is to undercut the lien foreclosure statutory process and attorney fees remedy entirely to permit the recovery of attorney fees based on a simple common-law contract claim.
That strikes me as a surprising result. I think it doubtful that the Legislature created an unnecessary lien foreclosure process with the intention of establishing a new route to recover attorney fees for an existing common-law contract claim—particularly when the Legislature went so far to create a statutory regime that repeatedly highlights that the prevailing foreclosure lien claimant is eligible for recovery of attorney fees. Should the Legislature decide to pass the Construction Contract Claim Act with a similar provision for attorney fees for construction contract claims, I will surely join the majority’s conclusion that success on a contract claim suffices to allow such an award. Until then, I find the majority’s construction untenable.
The great irony is that, in purporting to construe the CLA, the majority has converted a statutory attorney fees remedy requiring prevailing on a lien foreclosure action into one in which prevailing on the “main issue” of the lawsuit is sufficient. Very simply, there is no textual support for an attorney fees remedy under the CLA by “ ‘prevailing on the main issue . . . .’ ”[41] Of course, this extension of entitlement to statutory attorney fees to any ancillary claims, and the subsequent purported limitation to contract claims, finds no an *582 chor in the actual text of the CLA; nor does the majority opinion explain how the “main issue” envisioned by a statute designed to establish lien rights for persons performing labor or providing material or equipment for the improvement of real property[42] is addressed by awarding attorney fees on a standard common-law contract claim. The majority opinion’s rationale ignores both the actual text and context of the CLA. This is a remarkable, but not laudable, accomplishment for a court. The majority opinion gives primacy to what it perceives as the purpose of the legislative scheme at the expense of the statute’s text. This Court abandoned that so-called approach to statutory construction almost twenty years ago, striving to achieve statutory constructions founded on the actual language of an act.[43]
The majority opinion justifies including contract claims and excluding other ancillary claims as a trigger for entitlement to attorney fees by asserting that lien claims and contract claims are “integrally related” to lien foreclosure actions. While I concede that a contract claim for labor or materials is logically related to a lien foreclosure action,[44] that conclusion does not explain why other ancillary claims are less “integrally related” to lien claims and, therefore, do not trigger an *583 entitlement to attorney fees.[45] It is not surprising that the majority offers no additional explanation for its line drawing because its rationale is not tied to the text of the CLA. Once the connection between success on the lien foreclosure action and entitlement to attorney fees is broken, the majority is forced to draw an arbitrary line to make its expansion of entitlement to attorney fees appear to be more modest than it is.
Stunningly, what the majority opinion does today is exactly that which this Court rejected in HA Smith Lumber & Hardware Co v Decina.[46] Though it attempts to distinguish Decina, the majority’s analysis fails either to make a legally significant distinction between that case and the instant dispute or provide a tenable construction of the statutory text. The lien claimants in both Decina and the instant appeal brought alternative claims—a CLA claim and a contract claim—for the same remedy. The trial courts in both Decina and this case granted relief on the basis of the contract claim. In Decina, whether accurate or not, the trial court actually stated that the plaintiffs “ ‘each *584 ha[d] valid claims of lien,’ ”[47] even though the liens did not attach to the construction property.[48] In the instant case, the trial court expressly stated, repeatedly, that neither it nor the arbitrator had ever adjudicated RCG’s lien claim and held that RCG had extinguished its lien. Thus, the Decina lien claimants had an arguably stronger—though ultimately unsuccessful— argument that the trial court had actually adjudicated its lien claim than RCG does in the instant case.
At the time plaintiff accepted full payment, it could not plausibly argue that it “ha[d] a right to a construction lien under [the CLA],”[49] when no such right was ever determined to exist by the trial court. Interestingly, the majority has no problem calling RCG a "lien claimant,”[50] despite the fact that neither the trial court nor the arbitrator—the only fact-finding entities that have been involved in this case—ever made such a determination. It is axiomatic that this Court is not a fact-finding body. I believe that any finding that RCG meets all the requirements of a lien claimant is one that can only be made by the fact-finder, i.e., the trial court or the arbitrator, and in this case both expressly refused to do so.[51] Unexplained is how a subsequent hearing on attorney fees now ordered by the majority *585 can revive RCG’s lien, which it extinguished by accepting full payment. As a consequence, the majority opinion has ordered a futile act, disguising that it has abandoned the statute to create an attorney fees remedy the Legislature never contemplated.
IV. CONCLUSION
For the reasons stated, I do not believe that RCG is entitled to attorney fees. The attorney fees provision of the CLAonly allows a trial court to award attorney fees “to a lien claimant who is the prevailing party.”[52] Because RCG did not meet the statutory definition of “lien claimant” under the CLA, and because it voluntarily extinguished its lien claim before the trial court could have so determined, I do not believe RCG is entitled to attorney fees and would reverse the Court of Appeals on that issue. For these reasons, I dissent.
ZAHRA and LARSEN, JJ., concurred with YOUNG, C.J.

 MCL 570.1101 et seq.

 This payment included the net arbitration award plus accrued interest.

 RCG thus implicitly recognized that, by unconditionally accepting payment, its attorney fees claim could be extinguished, which it, in fact, was. To maintain that claim, RCG could have refused to accept the proffer of payment and extinguishment of its lien-—as contemplated in Bosch v Altman Constr Corp, 100 Mich App 289, 297; 298 NW2d 725 (1980) (“[A] lienor is not required to accept tender of payment after a complaint has been filed if he wishes to pursue his statutory right to attorney fees.”)—or it could have bargained with LOTN for a larger payment that took into account that accepting payment before adjudication of RCG’s lien claim would extinguish the lien claim and RCG’s attendant claim for attorney fees. None of that happened in this case.

 Ronnisch Constr Group, Inc v Lofts on the Nine, LLC, 306 Mich App 203, 205, 212; 854 NW2d 744 (2014).

 Id. at 214.

 Ronnisch Constr Group, Inc v Lofts on the Nine, LLC, 497 Mich 1003 (2015).

 Moore v Secura Ins, 482 Mich 507, 516; 759 NW2d 833 (2008).

 Smith v Khouri, 481 Mich 519, 526; 751 NW2d 472 (2008).

 Speicher v Columbia Twp Bd of Trustees, 497 Mich 125, 133; 860 NW2d 51 (2014).

 1980 PA 497, title, as amended by 2010 PA 147 (emphasis added). “Although a [title] is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope.” Malcolm v East Detroit, 437 Mich 132, 143; 468 NW2d 479 (1991).

 Ante at 552-553 (citations omitted; alterations in original).

 The majority disregards this Court’s duty to give the statutory language its fair meaning by relying, at least in part, on the legislative directive that the act be “ ‘liberally construed.’ ” See ante at 553 (citation *572 omitted). The majority has mistaken the directive for liberal construction as free rein to expand the statute to construct an attorney fees remedy that lacks textual and contextual support. Statutory interpretation, whether liberal or strict, is rendered illegitimate when the fair meaning of a text is disregarded. See Scalia & Garner, Reading Law: The Interpretation of Legal Texts (St Paul: Thomson/West, 2012), p 233 (stating that a legislative provision requiring that a statute be liberally construed “should be regarded as requiring a fair interpretation as opposed to a strict or crabbed one—which is what courts are supposed to provide anyway”). A liberal interpretation is “ ‘clearly inadmissible, if it extends beyond the just and ordinary sense of the terms.’ ” Id. at p 364, quoting 1 Story, Commentaries on the Constitution of the United States (2d ed, 1858), § 429, p 304.

 MCL 570.1101.

 See, e.g., MCL 570.1117 (providing extensive procedural requirements for the enforcement of a construction lien under the CLA).

 MCL 570.1118(2) (emphasis added). Additionally, the statute provides that a court may allow reasonable attorney fees to a prevailing defendant if the court determines that the lien claimant’s action to enforce a construction lien was vexatious. MCL 570.1118(2).

 MCL 570.1105(2) (emphasis added).

 Id. Under the CLA, “person” is defined as “an individual, corporation, partnership, sole proprietorship, association, other legal entity, or any combination thereof.” MCL 570.1106(1).

 MCL 570.1118(2).

 MCL 570.1117(5) (“In connection with an action for foreclosure of a construction lien, the lien claimant also may maintain an action on any contract from which the lien arose.”).

 See Haliw v Sterling Heights, 471 Mich 700, 706-707; 691 NW2d 753 (2005).

 MCL 570.1107(1).

 MCL 570.1107(1) (emphasis added). Once there was no longer any amount still owed on the construction contract, RCG clearly did not “hav[e] a right to a construction lien under this act.” MCL 570.1105(2) (emphasis added). See also Solution Source, Inc v LPR Assoc Ltd Partnership, 252 Mich App 368, 380; 652 NW2d 474 (2002) (“[I]f a construction lien has not been satisfied or discharged before trial, a court still has jurisdiction to award attorney fees in relation to enforcement or collection of the lien.”) (emphasis added). In this case, the lien was satisfied before it was ever adjudicated on the merits, and the trial *575 court properly held that LOTN paid RCG the amount required by arbitration on the contract claim. Therefore, the trial court did not err by holding that RCG “cannot be deemed to be a prevailing lien claimant in this matter.”

 MCL 570.1105(2) (emphasis added).

 MCL 570.1118(2).

 MCL 570.1105(2) (emphasis added).

 MCL 570.1107(1). See also MCL 570.1115(2) (“A lien claimant who receives full payment for his or her contract shall provide to the owner, lessee, or designee a full unconditional waiver of lien.”); Bosch, 100 Mich App at 297 (“[A] lienor is not required to accept tender of payment after a complaint has been filed if he wishes to pursue his statutory right to attorney fees”) (emphasis added).

 MCL 570.1118(2) (emphasis added).

 MCL 570.1105(2) (emphasis added).

 Ante at 554 n 22. In the instant case, the majority offers that such a hearing could have been held when RCG moved for confirmation of the arbitration award. Unfortunately for the majority position, that is not what happened below. Further, the majority opinion’s proposal for curing its Achilles’ heel problem completely contradicts the majority’s own description of what a confirmation of award proceeding is. See ante at 565 n 65, quoting 6 CJS, Arbitration, § 181, p 248 (2004) (“Confirmation is a summary proceeding where the court merely converts an arbitration award into a final judgment.”) (emphasis added).

 This is not to say that an alleged lien claimant will always have to reject payment of an award to recover attorney fees. In fact, in the typical case brought under the CLA, the lien claimant will necessarily have been adjudicated a “lien claimant” under the CLA when it prevails. The majority fails to give any meaning to the defined term “lien claimant,” which requires that the claimant be a person “having a right” to a lien, MCL 570.1105(2), at the time it “prevail[s],” MCL 570.1118(2). Those provisions require an adjudication that the majority now holds can happen after the right to a lien has been extinguished, not before. If *577 a putative lien claimant attempts to recover attorney fees on a now-satisfied, never-adjudicated lien claim, the prior acceptance of judgment satisfying the lien extinguishes both the lien, MCL 570.1107(1), and any claim to attorney fees under the act, MCL 570.1118(2).

 MCL 570.1105(2).

 MCL 570.1107(1).

 Ante at 564-566 (citations omitted).

 Ante at 566-567 (citations omitted).

 Ante at 566.

 MCL 570.1107(1).

 See note 3 of this opinion.

 MCL 570.1101. Again, the CLA was intended to “establish, protect, and enforce by lien the rights of persons performing labor or providing material or equipment for the improvement of real property; to provide *580 for defenses to construction liens; [and] to provide remedies and prescribe penalties . . . 1980 PA 497, title, as amended by 2010 PA 147 (emphasis added).

 MCL 570.1117(5); MCL 570.1118(2); MCR 2.203(A); MCR 2.203(B).

 Ante at 564 n 63.

 Ante at 563 (citation and quotation marks omitted).

 See 1980 PA 497, title, as amended by 2010 PA 147.

 “[W]hen reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature’s intent. We begin by examining the plain language of the statute. It is a fundamental principle of statutory construction that the words used by the Legislature shall be given their common and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature’s intent.” Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 159; 615 NW2d 702 (2000) (Markman, J.) (citation omitted).

 See MCL 570.1107(1).

 This problem is one that will surely arise in future litigation. The Michigan Court Rules require parties to join every claim the pleader has against an opposing party arising out of the transaction or occurrence that is the subject matter of the action. MCR 2.203(A). Further, like the CLA joinder provisions, “[a] pleader may join as either independent or alternate claims as many claims, legal or equitable, as the pleader has against an opposing party.” MCR 2.203(B) (emphasis added). I fear the majority opinion will generate additional litigation over just how “integrally related” ancillary claims must be in order to recover attorney fees (e.g., “The general contractor ran over my toolbox, thereby increasing my cost of performance on this construction contract.”). And, in fact, the majority explicitly notes that future litigation will be needed to determine future ancillary claims. See ante at 564.

 H A Smith Lumber & Hardware Co v Decina, 480 Mich 987 (2007).

 H A Smith Lumber & Hardware Co v Decina (On Remand), 265 Mich App 380, 382; 695 NW2d 347 (2005), rev’d 480 Mich 987 (2007).

 It is hard to imagine how one could have a valid claim of lien that never attaches to the property in question. Nevertheless, the lien claimants in Decina certainly did not prevail on the lien claims they alleged.

 MCL 570.1105(2).

 Ante at 554-558.

 In this case, as stated, the trial court held that RCG had extinguished its lien claim by accepting full payment. The majority opinion never bothers to explain why this holding is erroneous and must be overruled.

 MCL 570.1118(2).