*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

DION LAMARR VAUGHN,

      Defendant-Appellee.

FOR PUBLICATION
December 1, 2022

No. 356400
Wayne Circuit Court
LC No. 19-000788-01-FH

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

BRYAN DOUGLAS VAUGHN,

      Defendant-Appellee.

No. 356402
Wayne Circuit Court
LC No. 19-000788-02-FH

Before: RONAYNE KRAUSE, P.J., and JANSEN and MURRAY, JJ.

RONAYNE KRAUSE, P.J. *(dissenting)*.

I fully agree with the majority's determination that vehicle repair shops are a "closely regulated" industry, such that warrantless searches may be performed within the scope of MCL 257.1317(1). I further agree with the majority's observation that the police did not engage in any threatening or disrespectful misconduct and with the majority's disposition of defendants' arguments regarding reasonable business hours. However, I respectfully disagree with the majority's determinations that the warrantless searches permitted by MCL 257.1317(1) extended to defendants' locked vehicle lot and that suppression of evidence for exceeding that scope is an inappropriate remedy. I would therefore affirm.

Initially, I recognize that although evidence may be suppressed if it is obtained in violation of a person's constitutional rights, suppression is not a proper remedy for a violation of mere

-1-

statutory rights. In *People v Hawkins*, 468 Mich 488, 500-501; 668 NW2d 602 (2003), our Supreme Court considered whether to suppress evidence seized pursuant to a search warrant supported by an affidavit that did not comply with the requirements of Michigan's search warrant act, MCL 780.651 *et seq*. Notably, our Supreme Court was not presented with any question of whether the warrant was *constitutionally* sufficient. *Id*. at 493, 512. Our Supreme Court held that "where there is no determination that a statutory violation constitutes an error of constitutional dimensions, application of the exclusionary rule is inappropriate unless the plain language of the statute indicates a legislative intent that the rule be applied." *Id*. at 507. In *People v Anstey*, 476 Mich 436, 440-441; 719 NW2d 579 (2006), the defendant was arrested for OUIL/UBAL and denied his statutory right to have an independent chemical test performed. Our Supreme Court analyzed the statute and concluded that the statute did not contemplate exclusion of evidence as a remedy. *Id*. at 442- 445. The Court reiterated that suppression of evidence is an appropriate remedy where constitutional rights were violated, not where mere statutory rights were violated. *Id*. at 447- 449. In *People v Mazzie*, 326 Mich App 279, 283-285; 926 NW2d 359 (2018), the defendant was arrested after a traffic stop that was based on a LEIN search, and the defendant argued, in part, that the LEIN information had been improperly supplied by the Secretary of State in violation of certain confidentiality statutes. This Court held that those statutes did not apply to the police and did not provide for exclusion of evidence as a sanction, and the police officers' suspicion was reasonable in any event. *Id*. at 289-297.

The above cases all involved a violation of a statutory right but not a violation of a constitutional right. In contrast, no statutory right was violated in this matter. Nothing in the motor vehicle service and repair act, MCL 257.1301 *et seq*., explicitly forbade the police from entering defendants' lot. To the contrary, the applicable statutes granted certain rights to law enforcement *as exceptions to* the constitutional rights otherwise held by defendants. Critically, although closely regulated businesses have attenuated Fourth Amendment rights, those rights are not wholly rescinded: even where a statute superficially appears to authorize unrestricted inspections, those inspections must nevertheless be reasonable and restricted in scope to carrying out the purposes of the regulation at issue. *Gora v City of Ferndale*, 456 Mich 704, 716, 719-722; 576 NW2d 141 (1988). In other words, absent some kind of statutory grant of authority to the police, defendants had the same constitutional rights as anyone else to be free from unreasonable searches and seizures. If the police exceeded the scope of their authority under the statute, that would not constitute a violation of defendants' statutory rights, but rather would exceed the police officers' own rights and intrude upon defendants' constitutional rights. Therefore, if the warrantless entry into defendants' lot was not authorized by the statute, it was a violation of defendants' Fourth Amendment rights, and suppression of evidence would be the appropriate remedy.

Whether the warrantless entry into the lot was permitted under the circumstances of this case is, I acknowledge, a closer question. The statute permits "periodic unannounced inspections of the premises, parts records, and part inventories of a facility." MCL 257.1317(1). The motor vehicle service and repair act does not define the words "records," "inventory," "parts," or "premises." Nevertheless, "words and phrases used in an act should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole." *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008). "Although a preamble is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope." *Malcolm v City of East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991). Notwithstanding the ancient rule that statutes

must be strictly construed, "they are not to be construed so strictly as to defeat the obvious intention of the legislature." *US v Wiltberger*, 18 US 95 Wheat) 76, 95; 5 L Ed 37 (1820) (discussing penal laws). I conclude that the majority's proposed construction of MCL 257.1317(1) is improperly expansive.

The title of the motor vehicle service and repair act states that its purpose is:

to regulate the practice of servicing and repairing motor vehicles; to proscribe unfair and deceptive practices; to provide for training and certification of mechanics; to provide for the registration of motor vehicle repair facilities; to provide for enforcement; and to prescribe penalties.

Although, as noted, that title is not part of the act itself, it is highly noteworthy that the act enumerates a range of prohibited conduct in MCL 257.1307 through MCL 257.1307f, and that prohibited conduct appears to be aimed at curbing dishonesty in dealing with customers. Thus, the prohibited conduct is entirely consistent with the stated purpose of the act. This is significant because although the majority's all-encompassing definition of the word "premises" is consistent with the dictionary, it is *not* consistent with the purpose and the scope of the act.[1] For example, taken literally, the majority's construction of "premises" would permit warrantless searches of a toilet tank in an employee bathroom for hidden drugs whenever a police officer was bored and felt like going on a fishing expedition. Any warrantless search of "premises" under MCL 257.1317(1) must, therefore, be restricted to searches that might uncover evidence of dishonest or unfair dealings with customers. See *Gora*, 456 Mich at 716, 719-722. It is a mystery to me how the warrantless entry into the locked and gated vehicle lot, which the police admitted was solely for the purpose of searching for stolen vehicles, could fall within that scope.

Although the word "parts" is not defined, it would seem intuitive and obvious that, under the circumstances, "parts" refers to discrete and disconnected components of motor vehicles, rather than entire motor vehicles. It would also seem intuitive and obvious that the police officers could not reasonably have expected to find any kind of records stored in the lot. I agree with the majority that "parts inventories" must mean something different from "parts records." Nevertheless, by the same logic, "parts inventories" must mean something different from "parts." Furthermore, as used in MCL 257.1318, "reasonable business records" clearly refers to records of transactions, so I would infer that "parts records" would also be transactional in nature. Looking to the same dictionary relied upon by the majority, an "inventory" of parts would therefore equally-reasonably refer to "an itemized list of current assets" or "a list of goods on hand." Merriam-Webster's Collegiate Dictionary (11th ed). Looking for transactions involving parts and enumerations of parts

---

[1] As the majority initially recognizes, the purpose of the act is "to regulate the practice of servicing and repairing vehicles and to proscribe deceptive practices in light of prior gross abuses within the industry," accurately citing *Anaya v Betten Chevrolet*, 330 Mich App 210, 217; 946 NW2d 560 (2019) and *Auto Serv Councils of Mich v Secretary of State*, 82 Mich App 574, 596; 267 NW2d 698 (1978). The majority later describes the act's purpose as "to reduce the sale of stolen vehicles and their parts," which, although a highly desirable goal, is not a purpose of the act insofar as I can discern.

would be consistent with searching for evidence of dishonest dealings with customers. Entering a locked and gated vehicle lot for the specific purpose of looking for stolen vehicles would not be consistent with the purposes of the act.[2]

I therefore conclude that the warrantless entry into the vehicle lot, at least in the absence of any exigency, exceeded the scope of the kind of searches permitted by MCL 257.1317(1) and therefore intruded upon defendants' Fourth Amendment rights to be free from unreasonable searches and seizures. I would therefore affirm.

/s/ Amy Ronayne Krause

---

[2] The majority expresses concern that the police would be "forbidden" from inspecting defendants' actual inventory unless a warrantless search were to be permitted under the circumstances. Leaving aside the fact that nothing precluded the police from obtaining a search warrant, if defendants' inability to produce statutorily-required records indeed created "voids" to be "filled," the scope of the act is to uncover dishonest dealings with customers rather than stolen chattel. See footnote 1. The majority's construction would improperly expand that scope, and, in any event, by the majority's own reasoning, it should not encompass fishing expeditions.