# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMES FARRIS, Next Friend of KEAGAN
FARRIS,

       Plaintiff-Appellant,

v

JOHN H. MCKAIG, III,

       Defendant-Appellee.

FOR PUBLICATION
May 17, 2018
9:00 a.m.

No. 337366
Antrim Circuit Court
LC No. 2016-009053-NM

---

Before: SHAPIRO, P.J., and M. J. KELLY and O'BRIEN, JJ.

O'BRIEN, J.

James Farris, plaintiff's father and acting as plaintiff's next friend, appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(7). We affirm.

In 2010, defendant was appointed as plaintiff's lawyer-guardian ad litem (LGAL) in child protective proceedings involving plaintiff's parents. As a result of those proceedings, both of plaintiff's parents' parental rights were terminated. James appealed the termination, and our Supreme Court eventually remanded the case to the trial court "for reconsideration in light of *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014)," which had abolished the one-parent doctrine. *In re Farris*, 497 Mich 959 (2015). James's parental rights were subsequently reinstated, and plaintiff now resides with his father.

After the reinstatement of James's parental rights, plaintiff, through next friend James, filed this suit against defendant for legal malpractice stemming from defendant's role as plaintiff's LGAL. The complaint alleged that defendant had breached his duty as LGAL to plaintiff by failing to "inform[] himself of the true facts" of the child protective proceedings and failing to adequately advocate for plaintiff.

Defendant moved for summary disposition under MCR 2.116(C)(7), arguing that he was entitled to governmental immunity under MCL 691.1407(6), which grants a guardian ad litem (GAL) immunity from civil liability when acting within the scope of the GAL's authority. In response, James argued that MCL 691.1407(6) was only applicable to GALs, not LGALs. Following a hearing, the trial court held that LGALs are a "subset" of GALs and, therefore, are entitled to governmental immunity under MCL 691.1407(6). The trial court granted summary

-1-

disposition for defendant because the allegations in the complaint were solely related to actions undertaken by defendant in his role as LGAL.

On appeal, James, as plaintiff's next friend, argues that the trial court erred by concluding that LGALs are entitled to immunity under MCL 691.1407(6). We disagree.

"We review de novo a trial court's grant of summary disposition." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). We also review de novo the availability of governmental immunity, *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 578; 808 NW2d 578 (2011), and issues of statutory interpretation, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). With regard to a motion for summary disposition pursuant to MCR 2.116(C)(7), we review the affidavits, pleadings, and other documentary evidence presented by the parties, and we accept as true the plaintiff's well-pleaded allegations that are not contradicted by documentary evidence. *Oliver v Smith*, 290 Mich App 678, 683; 810 NW2d 57 (2010).

At issue in this case is a provision of the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*. The purpose of the GTLA is to limit governmental tort liability. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 321; 869 NW2d 635 (2015). Thus, the GTLA's grant of immunity is broad, and exceptions are narrowly construed. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000). Under the GTLA, "[a] guardian ad litem is immune from civil liability for an injury to a person or damage to property if he or she is acting within the scope of his or her authority as guardian ad litem." MCL 691.1407(6). However, the GTLA does not define "guardian ad litem." Therefore, it is necessary for us to interpret the statute and determine whether "guardian ad litem" as used in MCL 691.1407(6) applies to LGALs.

In reviewing questions of statutory interpretation, we must discern and give effect to the Legislature's intent. *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 631; 563 NW2d 683 (1997). "To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself." *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Id*. When interpreting an undefined statutory term, the term "must be accorded its plain and ordinary meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). Consulting a lay dictionary is proper when defining common words or phrases that lack a unique legal meaning, but when the statutory term is a legal term of art, the term "must be construed in accordance with its peculiar and appropriate legal meaning." *Id*. "Guardian ad litem" is a legal term of art, see *King v Emmons*, 283 Mich 116, 124-125; 277 NW 851 (1938), and, therefore, resort to a legal dictionary to determine its meaning is appropriate, see *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 440; 716 NW2d 247 (2006).

"Guardian ad litem" is defined in *Black's Law Dictionary* (10th ed) as "[a] guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." *Black's Law Dictionary* (10th ed) defines "guardian" as "[s]omeone who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability." Thus, we must decide whether an LGAL is someone appointed by the

court to appear in a lawsuit on behalf of a minor and has the legal authority and duty to care for the minor's person or property. We conclude that an LGAL is.

MCL 712A.17c(7) provides that "[i]n a proceeding under section 2(b) or (c) of this chapter, the court shall appoint a lawyer-guardian ad litem to represent the child." The LGAL's duties are laid out in MCL 712A.17d(1), which provides in pertinent part as follows:

A lawyer-guardian ad litem's duty is to the child, and not the court. The lawyer-guardian ad litem's powers and duties include at least all of the following:

(a) The obligations of the attorney-client privilege.

(b) To serve as the independent representative for the child's best interests, and be entitled to full and active participation in all aspects of the litigation and access to all relevant information regarding the child.

(c) To determine the facts of the case by conducting an independent investigation including, but not limited to, interviewing the child, social workers, family members, and others as necessary, and reviewing relevant reports and other information. The agency case file shall be reviewed before disposition and before the hearing for termination of parental rights. Updated materials shall be reviewed as provided to the court and parties. . . .

(d) To meet with or observe the child and assess the child's needs and wishes with regard to the representation and the issues in the case . . . .

* * *

(f) To explain to the child, taking into account the child's ability to understand the proceedings, the lawyer-guardian ad litem's role.

(g) To file all necessary pleadings and papers and independently call witnesses on the child's behalf.

* * *

(i) To make a determination regarding the child's best interests and advocate for those best interests according to the lawyer-guardian ad litem's understanding of those best interests, regardless of whether the lawyer-guardian ad litem's determination reflects the child's wishes. The child's wishes are relevant to the lawyer-guardian ad litem's determination of the child's best interests, and the lawyer-guardian ad litem shall weigh the child's wishes according to the child's competence and maturity. Consistent with the law governing attorney-client privilege, the lawyer-guardian ad litem shall inform the court as to the child's wishes and preferences.

(j) To monitor the implementation of case plans and court orders, and determine whether services the court ordered for the child or the child's family

-3-

are being provided in a timely manner and are accomplishing their purpose. The lawyer-guardian ad litem shall inform the court if the services are not being provided in a timely manner, if the family fails to take advantage of the services, or if the services are not accomplishing their intended purpose.

(k) Consistent with the rules of professional responsibility, to identify common interests among the parties and, to the extent possible, promote a cooperative resolution of the matter through consultation with the child's parent, foster care provider, guardian, and caseworker.

(l) To request authorization by the court to pursue issues on the child's behalf that do not arise specifically from the court appointment.

(m) To participate in training in early childhood, child, and adolescent development.

Based on the duties of an LGAL, it is clearly a guardian; after an LGAL is appointed in child protective proceedings, it has the statutory authority and duty to care for the child by advocating for the child's best interests. And because an LGAL is a guardian appointed by the court to appear in child protective proceedings on the minor-child's behalf, it satisfies the dictionary definition of "guardian ad litem."

However, this does not end our discussion. MCL 712A.13a indicates that, in child protective proceedings, a GAL is distinct from an LGAL. MCL 712A.13a states in pertinent part as follows:

(1) As used in this section and sections 2, 6b, 13b, 17c, 17d, 18f, 19, 19a, 19b, and 19c of this chapter:

\* \* \*

(f) "Guardian ad litem" means an individual whom the court appoints to assist the court in determining the child's best interests. A guardian ad litem does not need to be an attorney.

(g) "Lawyer-guardian ad litem" means an attorney appointed under section 17c of this chapter. A lawyer-guardian ad litem represents the child, and has the powers and duties, as set forth in section 17d of this chapter. . . .

Despite the fact that MCL 712A.13a differentiates between a GAL and an LGAL, MCL 712A.13a(1) begins with the qualifier, "As used in this section and sections 2, 6b, 13b, 17c, 17d, 18f, 19, 19a, 19b, and 19c of this chapter . . . ." MCL 712A.13a(1) does not state that its definitions are applicable to MCL 691.1407. "By specifically limiting the applicability of [these definitions] to certain statutory provisions, the Legislature expressed a clear intent that the definition[s] should not be applied elsewhere." *People v Mazur*, 497 Mich 302, 314; 872 NW2d 201 (2015). Moreover, MCL 712A.13a is not part of the GTLA; rather it is part of the Probate Code, and "the paramount purpose of the juvenile section of the Probate Code is to provide for the well-being of children." *In re Macomber*, 436 Mich 386, 390; 461 NW2d 671 (1990).

Though this purpose does not conflict with the GTLA's purpose of limiting governmental tort liability, *Genesee Co Drain Comm'r*, 309 Mich App at 321, we need not read these statutes in harmony—or *in pari materia*—because their scopes and aims "are distinct and unconnected," *Mazur*, 497 Mich at 313. Accordingly, the fact that a GAL is defined separately from an LGAL in MCL 712A.13a(1) does not affect our interpretation of what the Legislature intended by using "guardian ad litem" in MCL 691.1407(6).

Nonetheless, the distinction is significant to the extent that it signifies that there are differences between a GAL and an LGAL. For instance, a GAL need not be an attorney, while an LGAL must be an attorney. MCL 712A.13a(1)(f) and (g). A GAL, after conducting an independent investigation, "shall make a report in open court or file a written report of the investigation and recommendations." MCR 5.121(C). The GAL's report and any subsequent reports "may be received by the court and may be relied on to the extent of their probative value." MCR 5.121(D)(1). And interested parties have a right to "examine and controvert reports received into evidence" and can cross-examine the GAL that made the report. MCR 5.121(D)(2)(a)-(c). An LGAL, like a GAL, must conduct an independent investigation, MCL 712A.17d(1)(b), but, unlike a GAL, "[t]he court or another party shall not call [an LGAL] as a witness to testify regarding matters related to the case," and an LGAL's "file of the case is not discoverable," MCL 712A.17d(3). And while the court must appoint an LGAL in a child protective proceeding, MCL 712A.17c(7), a court is not required to appoint a GAL in such proceedings; MCL 712A.17c(10) provides, "To assist the court in determining a child's best interests, the court *may* appoint a guardian ad litem for a child involved in a proceeding under this chapter." (Emphasis added). Perhaps the starkest difference between the two is that, unlike an LGAL, appointment of a GAL "does not create an attorney-client relationship," and "[c]ommunications between that person and the guardian ad litem are not subject to the attorney-client privilege." MCR 5.121(E)(1). In addition to these differences, an LGAL has the statutory duties outlined earlier, which do not apply to a GAL.

Though these differences are numerous, we are not convinced that the Legislature intended for an LGAL to be considered distinct from a GAL for purposes of MCL 691.1407(6). The LGAL is a unique entity in Michigan. Its duty in a child protective proceeding is to the child, MCL 712A.17d(1), but it is "[t]o serve as *the independent* representative for the child's *best interests*," MCL 712A.17d(1)(b) (emphasis added), as determined by "*the lawyer-guardian ad litem's understanding* of those interests, *regardless* of whether the lawyer-guardian ad litem's determination reflects the child's wishes," MCL 712A.17d(1)(i) (emphasis added). Thus, an LGAL serves the same basic function as a GAL: independently investigating, determining, and representing the child's best interests.

But, as indicated, an LGAL must serve this purpose differently; an LGAL is not tasked with simply assisting the court in determining the child's best interests, but rather is an active participant in the proceedings. Like a party's attorney, an LGAL may advocate for a position, MCL 712A.17d(1)(i), call witnesses, MCL 712A1d7(1)(g), and is "entitled to full and active participation in all aspects of the litigation," MCL 712A.17d(1)(b). However, an LGAL is not a party's attorney; it is an independent representative of *the child's best interests*.

Indeed, MCL 712A.13a separately defines an "attorney" for purposes of child protective proceedings, stating that, as used in this section,

> "Attorney" means, if appointed to represent a child in a proceeding under section 2(b) or (c) of this chapter, an attorney serving as the child's legal advocate in a traditional attorney-client relationship with the child, as governed by the Michigan rules of professional conduct. An attorney defined under this subdivision owes the same duties of undivided loyalty, confidentiality, and zealous representation of the child's expressed wishes as the attorney would to an adult client. For the purpose of a notice required under these sections, attorney includes a child's lawyer-guardian ad litem. [MCL 712A.13a(1)(c).]

And MCL 712A.17d(2) provides that, when a child's interests differ from the LGAL's determination of the child's best interests, the court has discretion to appoint an attorney for the child. In pertinent part, that section provides

> If, after discussion between the child and his or her lawyer-guardian ad litem, the lawyer-guardian ad litem determines that the child's interests as identified by the child are inconsistent with the lawyer-guardian ad litem's determination of the child's best interests, the lawyer-guardian ad litem shall communicate the child's position to the court. If the court considers the appointment appropriate considering the child's age and maturity and the nature of the inconsistency between the child's and the lawyer-guardian ad litem's identification of the child's interests, the court may appoint an attorney for the child. An attorney appointed under this subsection serves in addition to the child's lawyer-guardian ad litem. [MCL 712A.17d(2).]

Thus, an attorney for the child is distinct from an LGAL; an LGAL is an advocate for the child's best interests as determined by the LGAL, MCL 712A.17d(1)(b) and (i), whereas an attorney for the child serves in the traditional sense of an attorney: an advocate for the child's interests as determined by the child, MCL 712A.13a(1)(c); MCL 712A.17d(2). While there will often not be a need for this distinction, we find it significant because it emphasizes that an LGAL is unique; it is an advocate in the proceedings—like an attorney—but it is not necessarily an advocate for a party. Rather, an LGAL is an advocate for the child's best interests.

In this role, an LGAL, although distinct from a GAL, serves the same purpose as a GAL: representing the child's best interests. MCL 712A.17c(10); MCL 712A.17d(1)(b). What constitutes the child's best interests is ultimately a professional judgment call made by the LGAL or GAL, independent of the child's wishes, although those wishes are considered as part of the GAL or LGAL's determination. In contrast, an attorney for the child, if appointed, advocates for the child's interests, regardless of what those interests are. Thus, although an LGAL functions like an attorney and its duties go beyond those of a GAL, its duties ultimately conform to those of a GAL: investigating and independently determining the child's best interests and then serving those interests. Accordingly, because an LGAL fits into the dictionary definition of "guardian ad litem" and serves the same purpose as a GAL in child protective proceedings, we broadly interpret "guardian ad litem" as used in the GTLA, *Nawrocki*, 463 Mich at 158, and conclude that the Legislature intended for LGALs to be immune "from civil liability for an injury to a person or damage to property if he or she is acting within the scope of his or her authority as" an LGAL, MCL 691.1407(6).

We find further support for this conclusion based on the context in which the Legislature enacted MCL 691.1407(6) and its subsequent creation of LGALs. In *Bullock v Huster*, 209 Mich App 551, 553; 532 NW2d 202 (1994), vacated and remanded 451 Mich 884 (1996) (*Bullock I*), a GAL was sued for negligence stemming from her role in a custody dispute. The GAL argued that she was entitled to immunity under MCL 691.1407, which, at that time, did not include the provision extending immunity to GALs. *Id*. at 554-555. This Court disagreed, concluding that the statute was a "comprehensive review of governmental immunity" that explicitly "failed to include GALs within the class of persons entitled to immunity." *Id*. at 555. The Court explained that "[w]here the Legislature undertakes such broad reform, the expression of one thing in the resulting statute may be deemed the exclusion of another." *Id*. Shortly after the release of *Bullock I*, the Legislature amended MCL 691.1407 to include the current subsection expressly granting GALs immunity from civil liability. *Bullock v Huster (On Remand)*, 218 Mich App 400, 403-404; 554 NW2d 47 (1996) (*Bullock II*). Our Supreme Court subsequently vacated *Bullock I* and remanded it to this Court, *id*. at 402, and this Court held on remand that the GAL was "immune from liability for any injuries to [the] plaintiff caused when [the] defendant was acting within the scope of her authority as a guardian ad litem for [the] plaintiff in the underlying child custody suit," *id*. at 405.

However, when the Legislature amended MCL 691.1407 following *Bullock I*, LGALs did not exist; LGALs were not codified until 1998. See 1998 PA 480. Prior to that time, courts were required to appoint an attorney to represent the child in child protective proceedings. See, e.g., 1998 PA 474. The role and responsibilities of that attorney were left largely undefined by statute, and instead were informed by the obligations that an attorney owed a client generally. See *In re AMB*, 248 Mich App 144, 221-227; 640 NW2d 262 (2001) ("In both the Child Protection Law and the Juvenile Code, the Legislature made clear that a child's attorney has the same duties that any other client's attorney would fulfill when necessary.").[1] This changed with the passage of 1998 PA 480 and its creation of LGALs and all of their statutory duties. MCL 712A.17d(1); see also *In re AMB*, 248 Mich App at 224 n 188. As explained, an LGAL is tasked with the statutory responsibility of representing the child's *best* interests—like a GAL—and not fulfilling the role of a traditional attorney in the attorney-client relationship.

James urges us to invoke the maxim of *expression unius est exclusion alterius*—that the express mention of one thing is to the exclusion of all others—to conclude that the Legislature's failure to amend MCL 691.1407(6) to explicitly include LGALs after the enactment of 1998 PA 480 indicates that the Legislature intended to exclude LGALs from MCL 691.1407(6)'s grant of immunity. However, that is true only if the Legislature recognized LGALs as being distinct from GALs. If, on the other hand, the Legislature recognized LGALs as type of GAL, there would be no need to mention LGALs in MCL 691.1407(6) because they were already included in the statute's reference to GALs. See *Kater v Brausen*, 241 Mich App 606, 609-610; 617

---

[1] Although *In re AMB* was decided after the creation of LGALs, the issue in the case did not relate to an LGAL but to an attorney for the child appointed under the earlier version of MCL 712A.17c. See *In re AMB*, 248 Mich App at 222; see also *id*. at 224 n 188 (acknowledging that 1998 PA 480 "changed the relationship between the child and the child's lawyer").

NW2d 40 (2000) (explaining that the Legislature did not intend to exclude "temporary guardians" from application of MCL 722.26b(1) by failing to expressly list them in that section because "the Legislature recognized temporary guardians as a subgroup of ordinary guardians" and, therefore, there was "no need to mention them").

The Legislature is presumed to be familiar with the rules of statutory construction, *Alma Piston Co v Dep't of Treasury*, 236 Mich App 365, 370; 600 NW2d 144, 147 (1999), and "to be aware of the existence of the law in effect at the time of its enactments," *Malcolm v City of East Detroit*, 437 Mich 132, 139; 468 NW2d 479 (1991). Thus, when the Legislature enacted 1998 PA 480, it was aware that the governmental immunity granted to GALs in MCL 691.1407(6) was to be broadly interpreted and exceptions narrowly construed. See *Nawrocki*, 463 Mich at 158, citing *Ross v Consumers Power Co*, 420 Mich 567, 618; 363 NW2d 641 (1984). Therefore, after enacting 1998 PA 480, there was no need for the Legislature to amend MCL 691.1407(6) to include LGALs because, by crafting an LGAL's purpose to reflect that of a GAL, the Legislature intended for an LGAL to be considered a "guardian ad litem" when that term is broadly interpreted for purposes of governmental immunity.[2]

---

[2] We also note that, given the importance of an LGAL's ability to make independent decisions regarding the child's best interest, we have no doubt that the Legislature intended to include LGALs in the class of GALs afforded immunity under MCL 691.1407(6). When this Court issued its opinion in *Bullock I*, Judge Fitzgerald, in a concurring opinion, wrote:

> I write separately . . . to express my concern that disgruntled parents who are dissatisfied with a custody decision may retaliate by suing the guardian ad litem, ostensibly on behalf of the child. I am concerned that guardians ad litem, whose services are consistently used in cases involving termination of parental rights and child neglect and used with increasing frequency in custody cases to protect the interests of children, may be reluctant to serve as guardians ad litem if they are forced to defend their actions . . . . [*Bullock I*, 209 Mich App at 557 (FITZGERALD, J., concurring).]

A trial court is required to appoint an LGAL in a child protective proceeding, and the touchstone of an LGAL's role is its statutory responsibility to protect the best interests of the child. The Legislature enabled LGALs to accomplish this by granting them statutory independence and autonomy; an LGAL is required to conduct an independent investigation and determine—free from outside influence—the child's best interests. This independence and autonomy is essential to accomplishing the LGAL's task; yet it would be inherently compromised in the absence of immunity. See *Short by Oosterhous v Short*, 730 F Supp 1037, 1039 (D Colo, 1990) ("Fear of liability to one of the parents can warp judgment that is crucial to vigilant loyalty for what is best for the child; the guardian's focus must not be diverted to appeasement of antagonistic parents."). In tasking LGALs with the independence to determine the child's best interests and advocate on behalf of those interests, we believe that the Legislature intended for LGALs to be immune so as to allow them to accomplish this goal free from considerations unrelated to the child's best interest.

The dissent provides a unique resolution to the problem before us, but its conclusion does not appear grounded the principles of statutory interpretation. At issue before us is whether the Legislature intended to include LGALs in its use of "guardian ad litem" in MCL 691.1407(6). The dissent believes that "guardian ad litem" as used in the GTLA should be defined by the duties of a GAL set forth in MCR 5.121(C). The dissent would hold that, if the duty for which the LGAL is sued "is also one performed by a GAL" as defined in MCR 5.121(C), then "the Legislature intended to protect the party performing that duty whether called a GAL or an LGAL." However, the dissent provides no support for its conclusion that the Legislature intended to define this statutory term by reference to a court rule. As stated, the Legislature is presumed familiar with the rules of statutory interpretation, and had it intended for us to interpret MCL 691.1407(6) through reference to a court rule, it certainly could have used language to reflect that intent. See *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991) ("[W]e believe that if the Legislature had intended such an interpretation . . . if would adopt explicit language clarifying that intent."). Thus, we disagree with the dissent's conclusion that this statutory term used by the Legislature should be interpreted through a court rule promulgated by the Judiciary, and instead adhere to the basic principles of statutory interpretation that we have explained throughout this opinion.[3]

For these reasons, we conclude that the Legislature intended for LGALs to be immune from civil liability under MCL 691.1407(6) when acting in their role as an LGAL. Because the allegations in this case all relate to defendant's actions while acting in his role as an LGAL, the trial court properly granted summary disposition to defendant.[4]

---

[3] Further, interpreting a Legislative term through reference to a court rule, without any indication that this is the Legislature's intent, potentially violates the separation of powers doctrine. Court rules were created by our Supreme Court, and that Court has the power to amend those rules. See MCR 1.201. If we were to interpret "guardian ad litem" as used in MCL 691.1407(6) by reference to MCR 5.121(C), our Supreme Court would have effectively defined, and at any point could redefine, that term. Obviously, this is not the judiciary's role. See *Wilson v Arnold*, 5 Mich 98, 104 (1858) ("It is for the court to declare what the law is—not to make it."); see also *Mich Residential Care Ass'n v Dep't of Social Servs*, 207 Mich App 373, 377; 526 NW2d 9 (1994) ("The constitutional duty of courts is to interpret and apply the law, not to enact laws.").

[4] We note that judicial mechanisms remain in place to prevent abuse, misconduct, and irresponsibility of LGALs. First, an LGAL's immunity only attaches to conduct within the scope of the LGAL's duties. MCL 691.1407(6). Second, the court monitors the LGAL's performance, see, e.g. MCR 3.915(2), and can remove the LGAL if necessary, MCL 712A.17c(9). Third, an LGAL is simply another advocate in our adversary system; whatever position an LGAL takes during a proceeding can be addressed and rebutted by the other parties, thereby ensuring that the trial court will be apprised of the facts and can issue an informed decision. Finally, an LGAL may be subject to punishment by the Attorney Grievance Commission if his or her conduct fails to meet the standards set forth in the Michigan Rules of Professional Conduct.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly