*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SB and IB, Minors.

UNPUBLISHED
February 10, 2022

No. 357609
Benzie Circuit Court
Family Division
LC No. 2000-003109-NA

Before: BORRELLO, P.J., and M. J. KELLY and REDFORD, JJ.

PER CURIAM.

In this child protective proceeding, through their lawyer-guardian ad litem (LGAL), the minor children, SB and IB, appeal as of right the trial court's order dismissing their petition to terminate respondent-father's parental rights. SB and IB also challenge evidentiary decisions the trial court made when considering their motion to suspend parenting time. We reverse and remand for additional proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

In November 2019, an incident of domestic violence took place between the parents of the minor children, in the presence of the children. In April 2020, the Department of Health and Human Services (DHHS) petitioned alleging that respondent-father perpetrated domestic violence against nonrespondent-mother[1] in the presence of the children. The petition also alleged that SB disclosed that respondent-father had perpetrated sexual abuse against IB in SB's presence. During hearings in April and May 2020, by agreement of the parties, respondent-father pleaded responsible to the allegations regarding the domestic violence incident, but respondent-father did not enter a plea regarding the sexual abuse allegations. The trial court took jurisdiction and suspended respondent-father's parenting time.

After the adjudication but before the initial disposition, SB disclosed that respondent-father had also sexually and physically abused him. At a dispositional hearing held on June 17, 2020, a prosecutor advised the trial court that there had been allegations that respondent-father sexually

---

[1] The children's mother is not a participant in this appeal.

abused IB, that the allegations were reviewed by Child Protective Services and that the police investigated but declined to charge respondent-father.

At the dispositional review hearing conducted on September 16, 2020, DHHS caseworker, Geoff Reddy, testified that SB disclosed that respondent-father had sexually abused him and that had been reported to the police who investigated and found SB's report inconsistent. Reddy admitted that he could not state whether the allegations were true. The children's LGAL advocated for termination of respondent-father's parental rights because of the new allegations. DHHS, however, advocated for allowing respondent-father to begin having supervised parenting time since reunification was the goal and the supervised visits would prevent the occurrence of sexual abuse if it ever had happened initially. The trial court ordered that respondent-father begin supervised parenting time.

On October 5, 2020, the LGAL filed a petition on behalf of the children to terminate respondent-father's parental rights. The LGAL's petition included new allegations of respondent-father's physical and sexual abuse of SB in addition to the allegations of abuse contained in the first petition. Contemporaneously with this petition, the LGAL moved to suspend respondent-father's parenting time because of the alleged abuse SB had disclosed. Meanwhile, nonrespondent-mother did not comply with the trial court's parenting-time order, so DHHS filed a motion to show cause why she should not be held in contempt of court.

At a preliminary hearing on the LGAL's petition, DHHS opposed the petition and argued that the children's LGAL could no longer serve as LGAL because he now served as the petitioner which created a conflict of interest. The LGAL explained to the court that because the DHHS refused to pursue the sexual abuse allegations he felt compelled to do so. The trial court decided not to authorize the petition because of the "ongoing case already set up while these other allegations were still out there" and because DHHS "already addressed this." The court initially agreed to allow the LGAL to present testimony to preserve the record for appeal, but then ordered that a new LGAL be appointed first to avoid a potential conflict of interest. On November 19, 2020, the court entered an order appointing a new LGAL.

At a later hearing, the new LGAL argued that the original LGAL lacked standing to pursue the second petition. Moreover, the new LGAL and DHHS both argued that the doctrine of collateral estoppel precluded the original LGAL from bringing the new petition. The trial court dismissed the new petition under the doctrine of collateral estoppel because it deemed the new petition substantially similar to the first petition. The trial court then removed the new LGAL and did not rule on whether her appointment negated the original LGAL's standing. Over the course of two days, the trial court simultaneously conducted a dispositional review hearing, a hearing on the original LGAL's motion to suspend parenting time, and a hearing on DHHS's show-cause motion. At the hearing's conclusion, the trial court ordered that respondent-father begin supervised parenting time and found the children's mother guilty of criminal contempt of court. This appeal followed.

## II. ANALYSIS

As a preliminary matter, we note that the record indicates that the trial court did not appear to recognize the original LGAL's authority and standing to file the second petition on the

children's behalf. In *Farris v McKaig*, 324 Mich App 349, 354-356; 920 NW2d 377 (2018), this Court explained:

> The LGAL's duties are laid out in MCL 712A.17d(1), which provides, in pertinent part, as follows:
>
>> A lawyer-guardian ad litem's duty is to the child, and not the court. The lawyer-guardian ad litem's powers and duties include at least all of the following:
>>
>> (a) The obligations of the attorney-client privilege.
>>
>> (b) To serve as the independent representative for the child's best interests, and be entitled to full and active participation in all aspects of the litigation and access to all relevant information regarding the child.
>>
>> (c) To determine the facts of the case by conducting an independent investigation including, but not limited to, interviewing the child, social workers, family members, and others as necessary, and reviewing relevant reports and other information. The agency case file shall be reviewed before disposition and before the hearing for termination of parental rights. Updated materials shall be reviewed as provided to the court and parties. . . .
>>
>> (d) To meet with or observe the child and assess the child's needs and wishes with regard to the representation and the issues in the case. . . .
>>
>> * * *
>>
>> (f) To explain to the child, taking into account the child's ability to understand the proceedings, the lawyer-guardian ad litem's role.
>>
>> (g) To file all necessary pleadings and papers and independently call witnesses on the child's behalf.
>>
>> * * *
>>
>> (i) To make a determination regarding the child's best interests and advocate for those best interests according to the lawyer-guardian ad litem's understanding of those best interests, regardless of whether the lawyer-guardian ad litem's determination reflects the child's wishes. The child's wishes are relevant to the lawyer-guardian ad litem's determination of the child's best interests, and the lawyer-guardian ad litem shall weigh the child's wishes according to the child's competence and maturity.

-3-

Consistent with the law governing attorney-client privilege, the lawyer-guardian ad litem shall inform the court as to the child's wishes and preferences.

(j) To monitor the implementation of case plans and court orders, and determine whether services the court ordered for the child or the child's family are being provided in a timely manner and are accomplishing their purpose. The lawyer-guardian ad litem shall inform the court if the services are not being provided in a timely manner, if the family fails to take advantage of the services, or if the services are not accomplishing their intended purpose.

(k) Consistent with the rules of professional responsibility, to identify common interests among the parties and, to the extent possible, promote a cooperative resolution of the matter through consultation with the child's parent, foster care provider, guardian, and caseworker.

(l) To request authorization by the court to pursue issues on the child's behalf that do not arise specifically from the court appointment.

(m) To participate in training in early childhood, child, and adolescent development.

Based on the duties of an LGAL, an LGAL is clearly a guardian; after an LGAL is appointed in child protective proceedings, he or she has the statutory authority and duty to care for the child by advocating for the child's best interests. And because an LGAL is a guardian appointed by the court to appear in child protective proceedings on the minor-child's behalf, an LGAL satisfies the dictionary definition of "guardian ad litem."

Under MCL 712A.19b(1), a petition to terminate parental rights may be brought by "the child, guardian, custodian, concerned person, agency, or children's ombudsman . . . ." This Court has recognized the legitimacy of termination petitions that were filed by LGALs on behalf of children. See, e.g., *In re Utrera*, 281 Mich App 1, 4-5; 761 NW2d 253 (2008). Accordingly, the original LGAL had statutory authority to file a petition for the termination of respondent-father's parental rights and remain the appointed LGAL with standing to do so on the children's behalf. The LGAL's representation of the children as their appointed LGAL did not present a conflict of interest and would not necessarily present a potential conflict of interest because the LGAL must act on the children's behalf in their best interests and the record indicates the LGAL sought to do so in this case. Nevertheless, *Farris* further explained that, under MCL 712A.17d(2), "when a child's interests differ from the LGAL's determination of the child's best interests, the court has discretion to appoint an attorney for the child." *Farris*, 324 Mich App at 360.

We conclude that the first LGAL had the authority to file the petition and this authority was not vitiated by the appointment of the second LGAL. Additionally, as relates to the

appointment of the second LGAL, under the specific facts and circumstances of this case, we do not find that the trial court abused its discretion.

## A. COLLATERAL ESTOPPEL AND RES JUDICATA DOCTRINES

The children argue that collateral estoppel does not bar their petition to terminate respondent-father's parental rights because it raised issues that were not raised by the first petition and the relevant issues that were raised by the first petition were not fully litigated. We agree.

We review de novo the applicability of legal doctrines such as res judicata and collateral estoppel which are questions of law. *Allen Park Retirees Ass'n Inc v City of Allen Park*, 329 Mich App 430, 443; 942 NW2d 618 (2019). "The preclusion doctrines of res judicata and collateral estoppel serve an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims." *Id*. at 444 (quotation marks and citation omitted). The term "collateral estoppel" refers to issue preclusion. *People v Gates*, 434 Mich 146, 154 n 7; 452 NW2d 627 (1990). The term "res judicata" refers to "claim preclusion," *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 629; 808 NW2d 471 (2010), which addresses "the preclusive effect of a judgment upon a subsequent proceeding on the basis of the same cause of action," *Gates*, 434 Mich at 154 n 7.

> The doctrine of res judicata applies where: (1) there has been a prior decision on the merits, (2) the issue was either actually resolved in the first case or could have been resolved in the first case if the parties, exercising reasonable diligence, had brought it forward, and (3) both actions were between the same parties or their privies. [*Paige v Sterling Heights*, 476 Mich 495, 521-522 n 46; 720 NW2d 219 (2006).]

"In order for a prior judgment to operate as a bar to a subsequent proceeding, three requirements must be satisfied: (1) the subject matter of the second action must be the same; (2) the parties or their privies must be the same; and (3) the prior judgment must have been on the merits." *In re Pardee*, 190 Mich App 243, 248; 475 NW2d 870 (1991). "[T]he subject matter is the same in both proceedings if the facts are identical or the same evidence would support both actions." *Id*. In *In re Pardee*, this Court held that res judicata "cannot settle the question of a child's welfare for all time, nor prevent a court from determining at a subsequent time what is in the child's best interest at that time[,]" and that the doctrine does not prevent a trial judge in a second termination hearing from "relying on the facts existing before the dismissal of the first petition." *Id*. at 249-250. Further, MCR 3.977(F) authorizes a trial court to act on a supplemental petition seeking termination of parental rights "on the basis of one or more circumstances new or different from the offense that led the court to take jurisdiction."

In *In re Pardee*, 190 Mich App at 248-250, this Court held that res judicata did not bar an order terminating a father's parental rights, even though the petitioner relied in part on facts that predated a prior order denying termination. This Court emphasized that unique concerns in parental rights cases militate against overly rigid application of the res judicata doctrine:

> We recognize that respondent has a significant interest in protecting himself from repeated vexatious or unnecessary relitigation of issues which the doctrine of res

judicata is designed to prevent. Nevertheless, this doctrine cannot settle the question of a child's welfare for all time, nor prevent a court from determining at a subsequent time what is in the child's best interest at that time. Moreover, res judicata should not be a bar to "fresh litigation" of issues that are appropriately the subject of periodic redetermination as is the case with termination proceedings where new facts and changed circumstance alter the status quo. [*Id*. at 248-249 (citations omitted).]

This Court further explained that "when the facts have changed or new facts develop, the dismissal of a prior termination proceeding will not operate as a bar to a subsequent termination proceeding." *Id*. at 248.

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid judgment and the issue was actually and necessarily determined in the prior proceeding." *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995). The collateral estoppel doctrine is intended " 'to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication . . . .' " *Monat v State Farm Ins Co*, 469 Mich 679, 692-693; 677 NW2d 843 (2004) (citation omitted). Collateral estoppel requires satisfaction of the following elements: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat*, 469 Mich at 683-684 (quotation marks, citation, and alteration omitted). For collateral estoppel to apply, "[t]he issues must be identical, and not merely similar, and the ultimate issues must have been both actually and necessarily litigated." *Bd of Co Rd Comm'rs for Co of Eaton v Schultz*, 205 Mich App 371, 376-377; 521 NW2d 847 (1994).[2]

The record indicates that the trial court did not apply the analytical framework necessary to assess whether collateral estoppel or res judicata applied under the circumstances of this case. The trial court gave as its rationale for dismissal of the second petition that the two petitions were "substantially similar." Such is not a valid ground for the application of the collateral estoppel doctrine. Indeed, this Court has specifically held that to apply the doctrine, "[t]he issues must be *identical, and not merely similar*, and the ultimate issues must have been both actually and necessarily litigated." *Bd of Co Rd Comm'rs for Co of Eaton*, 205 Mich App at 376-377 (emphasis added). The record indicates that the trial court did not apply the three-step test that must be satisfied for application of the collateral estoppel doctrine nor did it consider the test to determine if the res judicata doctrine applied. De novo review and application of the proper analytical framework dictates that the second petition is not barred.

1. ALLEGATIONS RAISED BY BOTH PETITIONS

---

[2] While the arguments and the court's oral ruling all pertained to collateral estoppel, the written order dismissing the petition cited res judicata as the ground for dismissal.

The children argue that litigation concerning the particular allegations contained in their petition that were also contained in DHHS's petition is not barred because they were never fully litigated. We agree.

In the first petition, in addition to alleging that respondent-father committed domestic violence in the presence of the children, DHHS alleged that SB had reported witnessing respondent-father sexually abusing IB.

In this case, DHHS, as they were authorized to do, dropped the allegation of sexual abuse against respondent-father and chose to proceed in the adjudicative phase solely on the domestic violence allegations alone. Respondent-father's agreement to plead to the domestic violence allegations and his knowing and voluntary plea disposed of that issue alone and concluded the adjudication phase. Because he entered no plea respecting the allegations of sexual abuse of IB, that issue was never adjudicated. The question whether respondent-father sexually abused IB, therefore, was not actually litigated and determined by a valid and final judgment resulting from a plea or trial on that issue.[3] Accordingly, the collateral estoppel doctrine did not apply to bar the second petition.

Similarly, the res judicata doctrine did not apply to bar the second petition. Although the allegations of sexual abuse of IB could have been litigated in the first petition's adjudication phase, DHHS chose not to do so. The allegations of physical and sexual abuse of SB were not raised and could not have been adjudicated since the new facts were disclosed after the adjudication phase of the first petition. Moreover, the same facts and evidence would not sustain both actions, and therefore, the two actions are not the same for res judicata purposes. Because the physical and sexual abuse allegations were not adjudicated, the claims in the second petition were not actually resolved and certainly the claims respecting the physical and sexual abuse of SB could not have been adjudicated in relation to the first petition. Further, as this Court explained in *In re Pardee*, 190 Mich App 248-249, res judicata does not bar fresh litigation "where new facts and changed

_____

[3] Although the criminal jeopardy concept is not applicable in child protective cases, see *Santosky v Kramer*, 455 US 745, 764; 102 S Ct 1388; 71 L Ed2d 599 (1982) (noting that parents have no double jeopardy defense against repeated state termination efforts), the jeopardy concept is informative regarding the question in this case whether the issue of sexual abuse raised in the first petition was actually litigated and determined by a valid and final judgment. In criminal cases, jeopardy attaches when a jury is selected and sworn and only then does the Double Jeopardy Clause protect an accused's interest in avoiding prosecutions even where no determination of guilt or innocence has been made. See generally *People v Lett*, 466 Mich 206, 215; 644 NW2d 743 (2002). Until a jury has been selected and sworn, a criminal defendant is not subject to jeopardy. A prosecutor's dismissal of charges before jury selection is not equivalent to a resolution of some of the factual elements of the offense charged. Thus, double jeopardy is not implicated. In this case, DHHS, by stipulating to respondent-father's plea on the domestic violence allegations, in essence dismissed the sexual abuse allegations before adjudication. Such action by DHHS, is analogous to a criminal prosecutor's decision to dismiss charges. Therefore, the issue of sexual abuse of IB was not adjudicated and respondent-father's parental rights on that ground were never in jeopardy. Accordingly, the collateral estoppel doctrine did not apply to bar the LGAL's petition.

circumstances alter the status quo." The facts, claims, and issues litigated in relation to the first petition are clearly not identical with those raised in the second petition.

The second petition seeking termination was not grounded on identical evidence, but based on facts existing before the first proceeding and facts that were disclosed after the trial court completed the adjudication phase on the limited domestic violence claim and moved on to conduct dispositional hearings. Accordingly, the doctrine of res judicata did not bar adjudicating the merits of the second termination petition or from relying on the facts existing before the first petition. *Id.* at 249-250.

## 2. ALLEGATIONS RAISED ONLY BY THE LGAL'S PETITION

The children argue that litigation pertaining to the remaining allegations in the children's petition is not barred because these allegations raised new issues. We agree.

New allegations of both physical and sexual abuse were raised in the second petition that were not alleged in the first petition. The second petition alleged that respondent-father had regularly slapped SB on the side of his head, that respondent-father hit SB in the face on Thanksgiving 2019, and that respondent-father struck SB to coerce him to perform oral sex. None of these allegations were made in the first petition. The trial court erred by concluding that these allegations were "substantially similar" to the allegations raised and abandoned by DHHS in the first petition. The first petition alleged that SB witnessed respondent-father sexually abuse IB. The second petition alleged respondent-father not only sexually abused IB in SB's presence but also that he physically and sexually abused SB. DHHS's argument that these allegations raise the same issue lacks merit. Given that neither the same claims nor issues were raised in the first petition, the claims and issues raised in the second petition were not resolved by a valid and final judgment. The trial court, therefore, erred by dismissing the second petition. Accordingly, we vacate the trial court's order.

## B. EVIDENTIARY ISSUES RELATED TO PARENTING-TIME DECISION

The children argue that the trial court abused its discretion by prohibiting admission and consideration of evidence pertaining to the children's motion to suspend respondent-father's parenting time. Because we reverse the trial court's decision regarding the dismissal of the LGAL petition, and remand for further proceedings consistent with this opinion, it is unnecessary to address the assignments of error regarding the trial court's previous evidentiary rulings.

## CONCLUSION

We vacate the trial court's order dismissing the children's petition to terminate respondent-father's parental rights. We order the trial court to conduct further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ James Robert Redford

-8-