*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN J. WILCOX,

      Plaintiff-Appellant,

v

DAMIAN WHEATLEY, RONALD ALLEN SMITH, VINCENT OVALLE, and MICHAEL SCOTT BARBER,

      Defendants-Appellees.

FOR PUBLICATION
August 11, 2022
9:05 a.m.

No. 358630
Ionia Circuit Court
LC No. 2021-034813-CZ

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and GARRETT, JJ.

GARRETT, J.

Plaintiff Steven Wilcox, a prisoner at Bellamy Creek Correctional Facility, alleges that defendants, four other prisoners, conspired to steal $500 worth of property from his cell. The trial court dismissed Wilcox's complaint because he failed to state whether he exhausted his administrative remedies, as required by Michigan's prisoner litigation reform act (PLRA), MCL 600.5501 *et seq.*, for any "action concerning prison conditions." See MCL 600.5503(1). The PLRA defines this type of action as "any civil proceeding seeking damages or equitable relief arising with respect to any conditions of confinement or the effects of an act or omission of government officials, employees, or agents in the performance of their duties." MCL 660.5531(a). Wilcox alleges no "act or omission" by any government officials. Thus, the question here is whether Wilcox's complaint constitutes a civil proceeding involving "conditions of confinement." We hold that the plain language of this phrase, informed by its ordinary meaning and its consistent usage under federal law, shows that a purely private tort lawsuit between prisoners is not a civil proceeding arising with respect to "conditions of confinement." Therefore, Wilcox's lawsuit was not an "action concerning prison conditions" and was not subject to the PLRA's administrative exhaustion requirement. Because the trial court erred by dismissing Wilcox's complaint on that basis, we reverse and remand.

## I. FACTUAL BACKGROUND

On April 26, 2021, Wilcox sued his fellow inmates, Damian Wheatley, Ronald Smith, and Vincent Ovalle, for civil conspiracy, assault and battery, and intentional infliction of emotional distress. Soon after, Wilcox amended his complaint to add another inmate, Michael Barber, as a defendant and to add a count for statutory conversion. Wilcox's complaint alleges that on April 12, 2021, Ovalle crept up behind him and began to repeatedly punch him. According to Wilcox, while Ovalle was attacking him, Smith stole Wilcox's personal property from his cell. Wilcox also alleges that Wheatley and Barber recruited Ovalle to attack Wilcox to allow Smith to commit this theft.

Without holding a hearing or receiving a motion to dismiss, the trial court sua sponte ordered the dismissal of Wilcox's complaint without prejudice. The trial court noted that MCL 600.5503(1) required a prisoner to exhaust all administrative remedies before bringing an action concerning prison conditions, yet Wilcox's complaint mentioned nothing about pursuing administrative remedies. Wilcox moved for reconsideration, arguing in part that his lawsuit was not a "civil action concerning prison conditions" because it could not be reasonably construed as a conditions of confinement case without any allegation of state action. The trial court denied his motion, stating that Wilcox's complaint "addresse[d] unsatisfactory conditions of confinement" because his allegations involve acts that occurred while Wilcox and the named defendants were incarcerated. Thus, the trial court explained, Wilcox must exhaust all administrative remedies before commencing his lawsuit. This appeal as of right followed.

## II. STANDARDS OF REVIEW

The trial court cited no court rule in its order dismissing Wilcox's complaint, but we construe the trial court's order as relying on MCR 2.116(I)(1). Under this rule, a trial court may grant summary disposition sua sponte "[i]f the pleadings show that a party is entitled to judgment as a matter of law." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009) (alteration in original), quoting MCR 2.116(I)(1).[1] We review de novo a trial court's decision to grant summary disposition under MCR 2.116(I)(1). *AK Steel Holding Corp v Dep't of Treasury*, 314 Mich App 453, 462; 887 NW2d 209 (2016). We also review de novo issues of statutory interpretation and application. *Anderson v Myers*, 268 Mich App 713, 714; 709 NW2d 171 (2005). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

## III. APPLICABILITY OF THE PLRA

---

[1] Dismissal under MCR 2.116(I)(1) must still comply with due-process concepts of notice and an opportunity to be heard. See *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546, 549-550; 899 NW2d 408 (2017). This Court in *Lamkin* held that a trial court deprived a plaintiff of due process when it failed to notify the plaintiff that it was contemplating entering summary disposition sua sponte. *Id*. at 550-551. Similarly, in this case, there is nothing in the record indicating the trial court informed Wilcox that it was contemplating dismissing his complaint for failure to comply with the PLRA. But Wilcox does not raise this issue, so we decline to rule on this ground.

-2-

Wilcox argues that he was not required to exhaust all administrative remedies because the PLRA did not apply to his lawsuit.

The PLRA "sets forth certain requirements that apply when a 'prisoner' brings a 'civil action concerning prison conditions.' " *Anderson*, 268 Mich App at 715 (citations omitted). One of those requirements is that "[a] prisoner shall not file an action concerning prison conditions until the prisoner has exhausted all available administrative remedies." MCL 600.5503(1). In this case, the trial court dismissed Wilcox's complaint because it found that he failed to plead that he had pursued available administrative remedies. Wilcox argues that MCL 600.5503(1) does not apply because his action is not an action concerning prison conditions.

MCL 600.5531(a) defines "civil action concerning prison conditions":

> "Civil action concerning prison conditions" means any civil proceeding seeking damages or equitable relief arising with respect to any conditions of confinement or the effects of an act or omission of government officials, employees, or agents in the performance of their duties, but does not include proceedings challenging the fact or duration of confinement in prison, or parole appeals or major misconduct appeals . . . .[2]

This definition is in the disjunctive. *Anderson*, 268 Mich App at 716 n 1. Under this definition, a civil action concerns prison conditions if either is true: (1) the action relates to the conditions of confinement; *or* (2) the action relates to the effects of the acts or omissions of a government agent, i.e., a prison official, in the performance of their duties. Wilcox's complaint makes no allegations involving acts or omissions by government officials and purely involves claims about conduct by his fellow inmates. Thus, Wilcox's suit does not arise with respect to "the effects of an act or omission of government officials, employees, or agents in the performance of their duties." MCL 600.5531(a). To constitute a "civil action concerning prison conditions," we must therefore determine whether Wilcox's lawsuit arises with respect to any "conditions of confinement."[3]

"Our fundamental obligation when interpreting a statute is to discern the legislative intent that may be reasonably inferred from the words expressed in the statute." *Brackett v Focus Hope, Inc*, 482 Mich 269, 275; 753 NW2d 207 (2008). In doing so, "we give effect to every word, phrase, and clause in a statute, and consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Anderson*, 268 Mich App at 714-715. When a statutory term is undefined, we may turn to dictionaries to help determine the plain and

---

[2] Although MCL 600.5503(1) does not use the word "civil" to modify "action concerning prison conditions," this Court has previously applied the definition in MCL 600.5531(a) to the exhaustion requirement under MCL 600.5503(1). See *Anderson*, 268 Mich App at 715.

[3] The trial court's order dismissing Wilcox's complaint stated that the lawsuit constituted a civil action as defined by MCL 600.5531(a), but did not specify which portion of the definition applied. The order denying Wilcox's motion for reconsideration, however, expressly found that Wilcox's lawsuit involved conditions of confinement.

ordinary meaning of the term. *Brackett*, 482 Mich at 276. "Consulting a lay dictionary is proper when defining common words or phrases that lack a unique legal meaning, but when the statutory term is a legal term of art, the term must be construed in accordance with its peculiar and appropriate legal meaning." *Farris v McKaig*, 324 Mich App 349, 354; 920 NW2d 377 (2018) (quotation marks and citation omitted).

The PLRA does not define the phrase "conditions of confinement," nor has any caselaw from our courts offered a definition.[4] Therefore, we turn first to dictionary definitions for guidance. "Conditions of confinement" does not appear to be a legal term of art, as *Black's Law Dictionary* does not define it. See also *Jenkins v Haubert*, 179 F3d 19, 28 (CA 2, 1999) (" 'Conditions of confinement' is not a term of art; it has a plain meaning."). Piecing a lay definition of "condition" together with "confinement" unfortunately leaves us in no better place. "Conditions" in this context are defined as "attendant circumstances." *Merriam-Webster's Collegiate Dictionary* (11th ed). And an attendant circumstance, itself a legal phrase, is a "fact that is situationally relevant to a particular event or occurrence." *Black's Law Dictionary* (11th ed 2019), p 306. "Confinement" is the "state of being confined," i.e., to "hold within a location" or "imprison." *Merriam-Webster's Collegiate Dictionary* (11th ed). Taken together, we do not believe that a "fact that is situationally relevant to being imprisoned" provides a helpful—if at all accurate—definition of the phrase "conditions of confinement" as it is used in the PLRA. This definition does not help us determine the scope of the phrase, and if anything, the definition creates more ambiguity than clarity.

To assist us in discerning the plain meaning of an undefined term, we may also consider the context in which the term is used. *Chico-Polo v Dep't of Corrections*, 299 Mich App 193, 198; 829 NW2d 314 (2013). Here, federal statutory law and caselaw using the phrase "conditions of confinement" provides significant context into our Legislature's intent to use the same phrase in the PLRA.

The Legislature enacted Michigan's PLRA in 1999. 1999 PA 147. A few years earlier, Congress enacted its own version of the PLRA, the Prison Litigation Reform Act of 1995, 42 USC 1997e *et seq*., which—much like Michigan's version—requires prisoners to exhaust their administrative remedies before filing suit. *Jones v Bock*, 549 US 199, 202; 127 S Ct 910; 166 L Ed 2d 798 (2007).[5] The federal exhaustion provision provides that "[n]o action shall be brought

---

[4] In *Anderson*, 268 Mich App at 716 n 1, this Court offered "no comment" on whether the plaintiff's allegations—that his parole officer supervised him unfairly—constituted "conditions of confinement" under MCL 600.5531(a). The issue was unnecessary to resolve because the lawsuit arose out of acts of the parole officer "in the performance of [her] duties." *Id*. at 716 (quotation marks omitted; alteration in original).

[5] In *Jones*, 549 US at 216, the United States Supreme Court held that under the federal PLRA, an inmate was not required to plead exhaustion in his complaint because the failure to exhaust is an affirmative defense that must be raised by the defendant. Whether this rule similarly applies to exhaustion under Michigan's PLRA, and thus provides an alternative basis for reversing the trial court's decision, is not properly before us.

*with respect to prison conditions . . .* until such administrative remedies as are available are exhausted." 42 USC 1997e(a) (emphasis added). This section does not define what an action "with respect to prison conditions" means, but another section of the federal PLRA, 18 USC 3626(g)(2), does.[6] "Because these two sections of the [federal] PLRA are directed toward similar ends and are thus substantially related, . . . the identical terms used in the two sections should be read as conveying the same meaning." *Booth v Churner*, 206 F3d 289, 294 (CA 3, 2000), aff'd 532 US 731 (2001).

18 USC 3626(g)(2) defines "civil action with respect to prison conditions" as:

[A]ny civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison[.]

Thus, the definition in Michigan's PLRA of "civil action concerning prison conditions" nearly mirrors the federal definition of "civil action with respect to prison conditions." Compare MCL 600.5531(a), with 18 USC 3626(g)(2). In contexts where Michigan and federal statutory law track one another, this Court has found federal precedent to be persuasive. See *White v Dep't of Transp*, 334 Mich App 98, 112-113; 964 NW2d 88 (2020) (noting that federal precedent interpreting Title VII of the federal Civil Rights Act, 42 USC 2000e *et seq.*, is generally persuasive for addressing questions arising under Michigan's Civil Rights Act, MCL 37.2101 *et seq.*); *MacKenzie v Wales Twp*, 247 Mich App 124, 129 n 1; 635 NW2d 335 (2001) (stating that federal decisions interpreting provisions under the federal Freedom of Information Act, 5 USC 552, are persuasive in interpreting similar language under the Michigan Freedom of Information Act, MCL 15.231 *et seq.*). Here, given that Michigan's PLRA was enacted a few years *after* the federal PLRA, and given how closely the statutory language aligns, federal precedent interpreting the federal PLRA may be persuasive to our interpretation of "conditions of confinement."[7]

In *Booth*, 206 F3d at 294, the Court of Appeals for the Third Circuit interpreted "conditions of confinement" as used in 18 USC 3626(g)(2):

As a matter of common sense, we understand the 'conditions of confinement' language . . . to include complaints such as those regarding cell overcrowding, poor prison construction, inadequate medical facilities, and incomplete law libraries. Put differently, actions arising under this clause relate to the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein.

---

[6] 18 USC 3626(g)(2) was amended as part of the same legislation establishing 42 USC 1997e. See PL 104-134, § 101; 110 Stat 1321; *Freeman v Francis*, 196 F3d 641, 643 (CA 6, 1999).

[7] Decisions from federal courts of appeals are not binding on this Court, but we may consider them for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

And in *Jenkins*, 179 F3d at 28, the Court of Appeals for the Second Circuit, in a case involving a conditions-of-confinement claim brought under 42 USC 1983,[8] more broadly defined "conditions of confinement":

> [Conditions of confinement] encompasses all conditions under which a prisoner is confined for his term of imprisonment. These include terms of disciplinary or administrative segregation such as keeplock or solitary confinement, as well as more general conditions affecting a prisoner's quality of life such as: the revocation of telephone or mail privileges or the right to purchase items otherwise available to prisoners; and the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution. [Citation omitted.]

We believe either definition better comports with the plain meaning of "conditions of confinement" as used in MCL 600.5531(a) than the interpretation assigned by the trial court in this case. The definition from *Booth* focuses on the "physical conditions" of prison and the "nature of the services" provided by prison officials, while the definition from *Jenkins* covers all conditions imposed by prison officials that affect the prisoner's life, from the basic needs of food and shelter to the imposition of discipline.[9]

Although we decline to adopt a particular definition, we note our agreement with these definitions that "conditions of confinement" requires government action. In accordance with its plain meaning, "conditions of confinement" implies an allegation of government deprivation, as it is the government—through its employees—that creates the conditions under which prisoners must live. Thus, a conditions of confinement claim brought by a prisoner must, at a minimum, allege state action involving the conditions under which the prisoner lives while incarcerated. The federal courts of appeals' definitions also help us discern what a conditions of confinement claim is *not*—a purely private civil suit between prisoners alleging no government action or omission.[10]

---

[8] Section 1983 provides a federal cause of action against government officials who act under color of law to deprive someone of their federal constitutional rights. *Monell v Dep't of Social Servs of City of New York*, 436 US 658, 682; 98 S Ct 2018; 56 L Ed 2d 611 (1978).

[9] In *Porter v Nussle*, 534 US 516, 525, 528; 122 S Ct 983; 152 L Ed 2d 12 (2002), the United States Supreme Court confronted whether an excessive force claim involved "prison conditions" under 42 USC 1997e(a) and was therefore subject to the federal PLRA's mandatory exhaustion requirement. The Court easily found that excessive force claims had to be exhausted before a prisoner could file suit, explaining that exhaustion applies to all prisoner suits alleging constitutional deprivation, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 523-524, 532. Here, the trial court's order goes even further, holding that without any allegation of state action, a prisoner's tort claim against fellow prisoners involves the "conditions of confinement."

[10] Our interpretation of "conditions of confinement" does not render the other clause of MCL 600.5531(a) nugatory. See *State Farm Fire and Cas Co v Old Republic Ins Co*, 466 Mich 142,

Further supporting this meaning of "conditions of confinement" is the long line of United States Supreme Court caselaw applying the Eighth Amendment's prohibition on cruel and unusual punishment—and its necessary requirement of state action—to conditions-of-confinement cases. In *Hutto v Finney*, 437 US 678, 686-687; 98 S Ct 2565; 57 L Ed 2d 522 (1978), the Supreme Court held that conditions of confinement in filthy, overcrowded isolation cells constituted cruel and unusual punishment. Three years later, in *Rhodes v Chapman*, 452 US 337, 347; 101 S Ct 2392; 69 L Ed 2d 59 (1981), a case involving "double celling" of inmates, the Court stated that conditions of confinement may be cruel and unusual when they "deprive inmates of the minimal civilized measure of life's necessities." Elaborating on the types of prison conditions that may constitute unconstitutional deprivations, the Court explained a decade later that "the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates." *Wilson v Seiter*, 501 US 294, 303; 111 S Ct 2321; 115 L Ed 2d 271 (1991). And soon after, the Court again explained that prison officials must provide "humane conditions of confinement," meaning they must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v Brennan*, 511 US 825, 832; 114 S Ct 1970; 128 L Ed 2d 811 (1994) (quotation marks and citations omitted). This line of caselaw illuminates the plain meaning of "conditions of confinement" as the Legislature intended that it be understood in Michigan's PLRA.

Unlike the persuasive guidance offered by federal caselaw, the trial court's reasoning was circular and unsound. According to the trial court, because "[a]ll counts [in Wilcox's complaint] occurred while [Wilcox] and named defendants were incarcerated with the Michigan Department of Corrections," the complaint "addresse[d] unsatisfactory conditions of confinement." Essentially, under the trial court's interpretation, the mere fact of incarceration alone is sufficient for a plaintiff's lawsuit to involve conditions of confinement, regardless of the allegations presented. We reject this interpretation because it conflicts with the plain meaning of Michigan's PLRA. The Legislature made an intentional choice when it incorporated the phrase "conditions of confinement," a phrase used in the federal PLRA and extensively in Eighth Amendment caselaw, into the definition of "civil action concerning prison conditions." In line with federal interpretations of the phrase, we hold that a "conditions of confinement" claim necessary involves

---

146; 644 NW2d 715 (2002) (courts must avoid an interpretation of a statute that would "render any part of the statute surplusage or nugatory"). While there likely is significant overlap between cases arising with respect to "conditions of confinement," and those arising with respect to "the effects of an act or omission of government officials, employees, or agents in the performance of their duties," these clauses do not encompass one another. For instance, the Third Circuit in *Booth*, 206 F3d at 294-295, after offering its definition of "conditions of confinement" under the federal PLRA, explained that the statute's "effects of actions by government officials" language "more closely refers to isolated episodes of unconstitutional conduct at the hands of prison officials." Our interpretation of "conditions of confinement" under Michigan's PLRA allows for similar distinctions when interpreting the "the effects of an act or omission of government officials, employees, or agents in the performance of their duties" language. Defining the clear contours of the differences between these clauses, however, is an issue we leave for another day.

an allegation of state action. Accordingly, the trial court erred by concluding that Wilcox's tort lawsuit against his fellow prisoners fell within the definition in Michigan's PLRA of "civil action concerning prison conditions."[11]

## IV. CONCLUSION

A private tort lawsuit brought by one prisoner against other prisoners does not constitute a "conditions of confinement" claim under Michigan's prisoner litigation reform act because it does not involve government action. Thus, Wilcox's lawsuit is not a "civil action concerning prison conditions" under MCL 600.5531(a), and he did not need to comply with the administrative exhaustion requirement under MCL 600.5503(1). The trial court erred by dismissing Wilcox's complaint for failing to plead whether he complied with this exhaustion provision. Accordingly, we reverse the trial court's order and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Amy Ronayne Krause

---

[11] Because of our disposition of the case, we need not address Wilcox's additional argument that if the exhaustion requirement did apply to his lawsuit, he did not need to exhaust administrative remedies because none were available to resolve disputes between inmates.